Johnson, Appellants, *v.* Yellow Cab Company of Philadelphia.

Argued January 10, 1972; reargued November 30, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Edwin P. Smith,* with him *Mendel, Dubyn, Schwartz and Smith,* for appellants.

*Bernard G. Segal* with him *Charles C. Hileman, III,* and *Schnader, Harrison, Segal & Lewis,* for appellee.

*David B. Fawcett, Jr., M. Richard Dunlap,* and *Dickie, McCamey & Chilcote,* for Yellow Cab Company of Pittsburgh, amicus curiae.

*Lewis H. Van Dusen, Jr.,* with him *David P. Bruton,* and *Drinker, Biddle & Reath,* for Southeastern Pennsylvania Transportation Authority, amicus curiae.

*James M. Penny, Jr.,* Assistant City Solicitor, with him *John Mattioni,* Deputy City Solicitor, and *Martin Weinberg,* City Solicitor, for City of Philadelphia, amicus curiae.

Opinion by Mr. Justice Manderino, March 26, 1974:
The appellants, Doris Johnson, her husband, Donald Johnson, and Arthur MacMillan, sued the appellee, Yellow Cab Company of Philadelphia, owner of a taxicab which was struck from behind on November 12, 1970, by a vehicle driven by an uninsured motorist. Doris Johnson and Arthur MacMillan were passengers in the taxicab. The complaint alleged negligent conduct by the uninsured motorist, but did not allege any negligent conduct by Yellow Cab. The trial court sustained Yellow Cab's demurrer to the complaint and an appeal followed to this Court. We reversed the order of the trial court and remanded the case for trial. Subsequently, Yellow Cab's petition for reargument was granted. Petitions were also granted permitting the City of Philadelphia, the Southeastern Pennsylvania Transportation Authority, and the Yellow Cab Company of Pittsburgh, to file briefs and participate in the oral argument as amicus curiae. After further consideration, we affirm the order of the trial court sustaining Yellow Cab's demurrer to the appellants' complaint. The allegations of the complaint do not sustain any cause of action presently recognized in Pennsylvania. The complaint contains no facts indicating any intentional or negligent tortious conduct, nor any contractual breach of any kind by Yellow Cab. The appellants do not contend otherwise. They argue, however, that the complaint states a statutory cause of action against the appellee, Yellow Cab. The statute relied on is the Uninsured Motorist Act, Act of August 14, 1963, P. L. 909 §1, as amended, 40 P.S. §2000.

The only allegations in the complaint concerning Yellow Cab were that (a) Yellow Cab, a common carrier, owned the taxicab struck in the rear by the uninsured motorist; (b) Yellow Cab is a self-insured liability insurance carrier under and pursuant to the laws of the Commonwealth of Pennsylvania; and (c) Yellow

Cab has not filed a written rejection of uninsured motorist coverage with the Commonwealth of Pennsylvania or any agency thereof. The appellants argue that if these allegations are true, a statutory cause of action is stated because the Uninsured Motorist Act requires the appellee, Yellow Cab, to carry uninsured motorist coverage unless such coverage has been rejected in writing. Since the complaint alleges that appellee has not filed a written rejection of uninsured motorist coverage, appellants insist that such coverage exists or the law should assume that such coverage exists under the Uninsured Motorist Act.

We cannot accept appellants' contentions. The Uninsured Motorist Act provides that "No motor vehicle *liability policy of insurance . . . shall be delivered* or issued for delivery in this State . . . unless *coverage is provided* therein . . ." for the protection of persons *against uninsured motorists.* It further provides that a motor carrier under the jurisdiction of the Public Utility Commission, such as Yellow Cab, ". . . shall have the right to *reject such coverage* in writing. . . ." Act of August 14, 1963, P. L. 909 §1, *as amended,* 40 P.S. §2000 (emphasis added). The appellants have alleged that the appellee is self-insured but they have not alleged the existence of any *liability policy of insurance.* This precludes any cause of action under the Uninsured Motorist Liability Act since that Act applies *only* when a *liability policy of insurance is delivered or issued for delivery.* If no *liability policy of insurance* exists, that Act, does not apply. One who is self-insured does not have a *liability policy of insurance.* Such a policy is a *contract* involving at least two parties— an *insurer* and an *insured.* The allegation that the appellee is self-insured negates any possible inference that a *liability policy of insurance* exists

Moreover, the title of the Act refers only to *insurance policies.* The title to the 1963 Act is: "An act

*requiring,* with limitations, *that insurance policies* insuring against loss occurring in connection with motor vehicles provide protection against certain uninsured motorists." Act of August 14, 1963, P. L. 909, *as amended,* 40 P.S. §2000 (emphasis added).

The title of a 1968 amendment to the Act is: "An act amending the act of August 14, 1963 (P. L. 909), entitled 'An act requiring, with limitations, that *insurance policies* insuring against loss occurring in connection with motor vehicles provide protection against certain uninsured motorists,' removing provisions relating to the rejection of coverage by certain insureds and extending the hazard protection of uninsured motorists' insurance to insure motorists unable to collect legal liability payment because of insurer insolvency." Act of December 19, 1968, P. L. 1067, 40 P.S. §2000 (emphasis added).

Titles "may be considered in the construction" of statutes under the Statutory Construction Act. 1 Pa. S. §1924. Neither title mentions self-insurers. The titles refer only to *insurance policies.* Thus, from the titles, we must arrive at the same conclusion reached in our examination of the text of the Act—a *liability policy of insurance* must exist before any cause of action may arise under the Uninsured Motorist Act.

The *rejection* of uninsured motorist coverage provided for in the Act further indicates that the Act applies only if there are at least two parties—an offeror and an offeree. The word "rejection" is used in the law when one party declines to accept the offer of another party. In the law, we do not speak of a single party rejecting one's own offer since that action would be meaningless. Under the Statutory Construction Act, I Pa. S. §1922(1), we must presume that the legislature did not intend an absurd result.

The appellants have suggested that the appellee, a self-insurer, should have sent a rejection of uninsured

motorist coverage to the Commonwealth of Pennsylvania. None of the agencies of the Commonwealth of Pennsylvania, however, have ever *offered a liability policy of insurance* to the appellee. The Public Utility Commission of Pennsylvania issued a *certificate* which permitted the appellee to be a self-insurer. The issuance of that certificate, however, was not the *delivery or the issuance for delivery of a liability policy of insurance.* The Act speaks of the rejection of *coverage.* One cannot reject *coverage* unless *such coverage* has been offered in a liability policy of insurance. We cannot reasonably read the clause in the Act concerning the *right to reject such coverage* with any other meaning. No matter how desirable the result advocated by the appellants might be, amendments to the Uninsured Motorist Act must be made by the legislature.

The appellants also contend that the 1968 amendment to the Act demonstrates a legislative intent to require common carriers to provide uninsured motorist coverage. The 1963 Act permitted *anyone* to reject an uninsured motorist coverage provision in a liability policy of insurance. The 1968 amendment to the Act reduced the class of persons who were permitted to reject uninsured motorist coverage, but that amendment made no change as to certain insureds, among them, common carriers. The 1968 amendment, therefore, had *no* effect on common carriers, such as the appellee, Yellow Cab. Common carriers still operate as under the 1963 Act. The 1968 amendment, thus, cannot be interpreted to indicate any changed legislative intent as to common carriers.

The legislature has provided under the Public Utility Code for the Public Utility Commission to prescribe insurance requirements for motor carriers in order to protect the public. Act of May 28, 1937, P. L. 1053, art. IX, §915, *as amended,* 66 P.S. §1355. The appellee, Yellow Cab, as a motor carrier is under the jurisdic-

tion of the Public Utility Commission. Under its statutory authority, the Public Utility Commission has issued rule 7 of its INSURANCE REQUIREMENTS OF BUS AND TAXICAB REGULATIONS. That rule, prescribing the insurance requirements applicable to the appellee, does not require motor carriers, such as the appellee, to purchase an insurance policy containing uninsured motorist coverage; nor does the rule require the appellee to protect its passengers in any other way from uninsured motorists. The possibility of requiring such protection has not escaped consideration by the Public Utility Commission. In 1969, the Commission issued a proposed amendment to rule 7, which would have required such protection. The proposed amendment, however, was not approved.

The appellants also argue that if the appellee, Yellow Cab, carries re-insurance, excess insurance or some type of co-insurance, the policy for such insurance may contain uninsured motorist coverage. There is no such allegation in the complaint and the possibility that such a policy exists cannot be inferred from any of the facts alleged in the complaint. We, therefore, do not consider the argument germane in determining whether the complaint before us states a cause of action.

There remains a procedural difficulty in this appeal. The appellants' complaint was captioned "Complaint in Equity," even though the appellants' prayer for relief requested money damages. The complaint was perhaps so captioned because the prayer for relief also asked that the "defendant be required to afford uninsured motorist insurance coverage to plaintiffs pursuant to the laws of the Commonwealth of Pennsylvania." Without attempting to analyze the true nature of the appellants' complaint, we note that an appeal from an equity matter is properly before this Court, but an appeal in a legal action for damages should have been

filed in the Superior Court. We have, nonetheless, considered that our appellate jurisdiction was perfected under section 503 of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, No. 223, art. V, §503, 17 P.S. §211.503.

The decree of the trial court sustaining appellee's preliminary objections to the appellants' complaint is affirmed.

---

DISSENTING OPINION BY MR. JUSTICE O'BRIEN:

I must respectfully dissent. Originally, the uninsured motorist statute permitted any operator or owner of a motor vehicle to reject, in writing, uninsured motorist coverage. The statute was amended, effective January 1, 1969, to eliminate that option, except for the owners and operators of motor vehicles designed for carrying freight or merchandise or motor vehicles operated for the carriage of passengers for hire or compensation. Act of August 14, 1963, P.L. 901, §1, as amended, 40 P.S. §2000.

The situation which now obtains in Pennsylvania is thus that no insurance company may offer a policy of automobile liability insurance in Pennsylvania unless it contains uninsured motorist coverage. While generally no one is forced to buy automobile insurance, people and entities in the position of appellee are so required, unless they are allowed by the Public Utility Commission to operate as self-insurers. Appellee in the instant case, having met the conditions of the Public Utility Code, has been authorized to be a self-insurer. It, therefore, was not required to purchase a policy of liability insurance, which policy, in accordance with the uninsured motorist law, would of necessity have contained an uninsured motorist provision. Had appellee been required to purchase such insurance, it could have purchased it without uninsured motorist coverage only by rejecting that coverage in writing.

The majority relies on a somewhat technical argument. In their view, the fact that appellee is self-insured means that no "policy" has been issued or delivered and, therefore, the Uninsured Motorist Act cannot apply. In my view, this is an unnecessarily narrow reading of the statute. The certificate which appellee received from the Public Utility Commission permitting it to act as self-insurer was in lieu of the policy of insurance which appellee would have otherwise had to purchase. It is more consistent with the wording and the purposes of both the Uninsured Motorist Act and the Public Utility Code to hold that that certificate should be considered a "policy" for purposes of the Uninsured Motorist Act. Appellee is, after all, a common carrier in an industry which is regulated by the Commonwealth for the protection of its citizens. I do not believe that it is too much of a burden to place upon a carrier to require it to take the affirmative step which would have been required had it not been a self-insurer if it wished to deprive its patrons of the protections of uninsured motorist coverage. Moreover, §a(2) of the Uninsured Motorist Act, 40 P.S. §2000(a)(2), the section requiring rejection of uninsured motorist coverage to be in writing, speaks only of rejecting *coverage,* not rejecting coverage in a *policy.* In addition, the section applies specifically to any ". . . owner or operator of any other motor vehicle . . . operated for the carriage of passengers for hire. . . ."

In my view, if the Legislature wished to exclude self-insurers like appellee from the provisions of the act, it would have done so specifically. Since it did not do so, and since appellee did not notify the Public Utility Commission that it was rejecting such coverage, I would hold that appellee, as a self-insurer, should be deemed to have provided uninsured motorist coverage.

Mr. Justice ROBERTS and Mr. Justice NIX join in this dissenting opinion.