## Self-Insureds Under No-fault

KANE, *Attorney General*, November 5, 1975— You have requested our opinion regarding whether the Insurance Department may impose certain self-insurance requirements upon motor carriers in connection with the Pennsylvania No-fault Motor Vehicle Insurance Act or whether the authority to

regulate such carriers lies with the Public Utility Commission. For the reasons discussed hereinafter, it is our opinion, and you are accordingly advised, that the Public Utility Commission has exclusive jurisdiction to impose self-insurance requirements upon motor carriers.

There does not seem to be any question that regulated common carriers are subject to the requirements of section 104 of the No-fault Law of July 19, 1974, P.L. 483 (No. 176), art. I, 40 P.S. §1009.104, establishing mandatory security for No-fault benefits. The question is who is to set the minimum insurance coverage requirements as well as supervise compliance. Should it be the Public Utility Commission by incorporating the specific obligation of self-insurance with the general obligations of a regulated common carrier for protection of the public, or should it be the Department of Insurance, joining regulated common carriers with all other obligors, treating all alike and assuring the necessary security for the fulfilling of the special requirements of the No-fault Law?

By virtue of its authority under the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974 (No. 176), 40 P.S. §1009.101, et seq., the Insurance Department has promulgated regulations, which, inter alia, specify that any entity wishing to obtain a self-insurance certificate must post certain minimum collateral with the Department of Transportation. The regulation also describes the type of securities which will be accepted as collateral (31 Pa. Code §66.6, et seq.) as well as requiring a proposed self-insured to enter into an agreement with the assigned claims plan and to pay its fair share of the claims and expenses of the plan. The assigned claims plan is organized and

maintained by insurance companies and is regulated by the Insurance Commissioner. It was established to provide No-fault benefits under certain conditions including the situation in which any obligor is financially unable to provide the required coverage: 40 P.S. §1009.108.

On the other hand, the Public Utility Commission is authorized to regulate self-insurance requirements for motor carriers by virtue of a provision of the Public Utility Code of May 28, 1937, P.L. 1053, art. IX, sec. 915, as amended, which provides in pertinent part that:

"The Commission may, as to motor carriers, prescribe, by regulation or order, such requirements as it may deem necessary for the protection of persons or property of their patrons and the public, including the filing of surety bonds, the carrying of insurance, *or the qualifications and conditions under which such carriers may act as self insurers with respect to such matters . . .;*" 66 P.S. §1355. (Emphasis supplied.)

In order to effectuate this statutory provision, the Public Utility Commission promulgated Rule 7 entitled "Insurance Requirements of Bus and Taxicab Regulations." This regulation, most recently amended on August 24, 1970, sets forth, inter alia, the minimum self-insurance requirements for taxicabs. Since the regulations promulgated by the Public Utility Commission and the Insurance Department impose inconsistent self-insurance requirements upon motor carriers, the question of whose law and regulations take precedence must be resolved.

Although the two somewhat conflicting statutes, 66 P.S. §1355 and 40 P.S. §1009.104, are part of two

larger codes, each of which deals with the separate subjects of regulation, i.e., Public Utility Law and Insurance Law, they both contain language which indicate that the purpose of these particular sections is to regulate the subject of self-insurance for motor vehicles. However, the Public Utility Law specifically states that the commission may prescribe, by regulation, such requirements that it deems necessary when motor carriers act as self-insurers. The No-fault Law is much less direct in its grant of authority as it only states that self-insurance requirements for owners of motor vehicles which operate in the Commonwealth are subject to the approval of the Commissioner. Since directly conflicting statutes are disfavored by law and courts strain to give effect to both, City of Wilkes-Barre v. Public Utility Commission, 164 Pa. Superior Ct. 210, 63 A. 2d 452 (1949), Duquesne Light Company v. Monroeville Borough, 449 Pa. 573, 298 A. 2d 252 (1972), the provision of the Statutory Construction Act, which provides that specific provisions of law prevail over the more general provisions, must be given its full weight. The Statutory Construction Act of December 6, 1972, P.L. 967 (No. 290), sec. 3, provides that.

"Whenever a general provision within a statute shall be in conflict with a specific provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa. C.S.A. §1933.

The No-fault Law provides that, regardless of fault, an individual involved in an accident shall be "made whole" by the insurance company which insures the individual's vehicle. This is the general intent of the No-fault Law and is not irreconcilable with the provision of the Public Utility Law specifying self-insurance for motor carriers. These two laws can be read in para materia in order that the particular provision of the Public Utility Law which provides that the commission may set the self-insurance requirements for motor vehicles prevails.

Further support of this doctrine can be found in a recent case which held that a taxicab company is under the jurisdiction of the Public Utility Commission which has the authority to prescribe insurance requirements for the company in order to protect the public: Johnson v. Yellow Cab Company of Philadelphia, 456 Pa. 256, 317 A. 2d 245 (1974). The issue in this case was whether the Yellow Cab Company came under the jurisdiction of the Insurance Department insofar as the Uninsured Motorist Act of August 14, 1963, P.L. 909, sec. 1, as amended, is concerned (40 P.S. §2000), or whether Yellow Cab came within the exclusive jurisdiction of the Public Utility Commission and its self-insurance requirements. The act specifically provided that a motor carrier under the jurisdiction of the Public Utility Commission had the right to reject uninsured motorist coverage in writing: 40 P.S. §2000(a)(2). Although the case was decided on rather technical grounds, our Supreme Court held that the Yellow Cab Company was not subject to the Uninsured Motorist Act. The court stated:

"The Legislature has provided under the Public Utility Code for the Public Utility Commission to

prescribe insurance requirements for motor carriers in order to protect the public. Act of May 8, 1937, P.L. 1037, Art. IX §915, as amended, 66 P.S. §1355. The appellee, Yellow Cab, as a motor carrier is under the jurisdiction of the Public Utility Commission. Under its Statutory Authority, the Public Utility Commission has issued rules of its Insurance Requirements Of Bus And Taxicab Regulations. That rule, prescribing the insurance requirements applicable to the appellee does not require motor carriers, such as the appellee to purchase an insurance policy containing uninsured motor coverage; nor does the rule require the appellee to protect its passengers in any other way from uninsured motorists. . . .": 456 Pa., at 261, 317 A. 2d, at 248-49.

Thus, even though the case was decided on other grounds in favor of Yellow Cab, the court indicated that the Public Utility Law would supersede the Insurance Department Law regarding uninsured motorists. Accordingly, the same rationale would apply for self-insurance.

To give total effect to the No-fault Law would be to impliedly repeal the Public Utility Law insofar as it is concerned with self-insurance for motor vehicles. It has often been held that implied repealers are in great disfavor: City of Wilkes-Barre v. Pennsylvania Public Utility Commission, supra, and Pittsburgh v. Public Utility Commission and Duquesne Light Co., 3 Pa. Commonwealth Ct. 546, 284 A. 2d 808 (1971). We can, therefore, assume that the legislature did not intend to render the self-insurance provision of the Public Utility Code a nullity by impliedly rejecting it.

The Wilkes-Barre case amply demonstrates this principle as it held that the term "all bridges" in a

Department of Transportation Law did not include a more specific category of bridges subject to Public Utility Commission regulations. This case provides support for the contention that the clauses contained in the No-fault Vehicle Law dealing with the "every owner of a motor vehicle" (40 P.S. §1009.104(a)) and "any owner of a passenger vehicle" (40 P.S. §1009.601) did not override the more specific grant of authority to the Public Utility Commission for "motor carriers" (as defined in 66 P.S. §1102(13), 66 P.S. §1355). See also Turkey Run Fuels, Inc., Appeal, 173 Pa. Superior Ct. 76, 95 A. 2d 370 (1953), and Paxon Mayman, Inc. v. Pa. Liquor Control Board, 11 Pa. Commonwealth Ct. 136, 312 A. 2d 115 (1973).

The courts of Pennsylvania have held time and again that when conflicting statutes seem to occur and the subject is an area of regulation of public utilities, the conflict must be decided in favor of the Public Utility Commission. In examples of cases where conflicts of statutes have occurred, we have found that the Public Utility Law has been upheld in: conflict with ordinances enacted under the Borough Code (Duquesne Light Co. v. Monroeville Borough, supra); statutes authorizing county planning commissions (Chester County v. Philadelphia Electric Company, 420 Pa. 422, 218 A. 2d 331 (1966)); statutes authorizing city ordinances (York Water Company v. York, 250 Pa. 115, 95 Atl. 396 (1915)); statutes granting authority to the State Department of Transportation (Pennsylvania Public Utility Commission v. Souderton Borough, 210 Pa. Superior Ct. 22, 231 A. 2d 875 (1967)).

For the reasons outlined above, it is our opinion that the Public Utility Commission has jurisdiction

over the self-insurance requirements of motor carriers. However, since the Insurance Department has its expertise in the field of insurance, it may be wise for the Public Utility Commission to conform its requirements as closely as possible to the minimum self-insurance requirements as contained in the No-fault Law and the regulations adopted thereunder.