## Modesta v. SEPTA

*Stanley M. Schwarz*, for plaintiff.
*Stanley V. Sinowitz*, for defendant.

GOLDMAN, *J.*, April 16, 1981—This case comes before the court on defendant SEPTA's preliminary objection in the nature of a motion to dismiss plaintiff's claim in equity for failure to state a cause of action.

The manner in which a court should determine preliminary objections appears in Gekas v. Shapp, 469 Pa. 1, 5-6, 364 A. 2d 691, 693 (1976):

"The standards for sustaining preliminary objections in the nature of a demurrer are quite strict. A demurrer admits every well-pleaded material fact set forth in the pleadings to which it is addressed as well as all inferences reasonably deducible therefrom, but not conclusions of law. In order to sustain the demurrer, it is essential that the plaintiff's complaint indicate on its face that his claim cannot be sustained, and the law will not permit recovery. If there is any doubt, this should be resolved in favor of overruling the demurrer." (Citations omitted.)

Plaintiff's complaint makes the following allegations of fact and conclusions of law. On March 2, 1978 a motor vehicle operated by George Negron, Jr. struck defendant's bus while plaintiff was a passenger for hire therein. Plaintiff sustained personal injuries solely as a result of Negron's negligence. At the time of the accident, Negron was an uninsured motorist within the meaning of the Uninsured Motorist Act of August 14, 1963, P.L. 909, as

amended, 40 P.S. §2000. SEPTA was at this time a self-insured entity within the meaning of the Pennsylvania No-fault Motor Vehicle Insurance Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq., and therefore, it is alleged, was obligated to provide uninsured motorist coverage to passengers, especially because SEPTA never filed a written rejection of such coverage under the terms of the Uninsured Motorist Act. However, SEPTA did not offer this protection and has refused to comply with plaintiff's demand to arbitrate this matter.

Defendant argues that its status as a self-insurer removes it from any obligation to furnish uninsured motorist protection to its passengers, citing Johnson v. Yellow Cab Co. of Philadelphia, 456 Pa. 256, 317 A. 2d 245 (1974). In the Johnson case, taxicab passengers suffered injuries caused solely from an uninsured motorist negligently striking the cab. They sued the cab company, a self-insurer, under the theory that the Uninsured Motorist Act's requirement of uninsured motorist coverage applied to self-insurers. Our Supreme Court, by a four to three decision, ruled in Johnson, supra, that no such cause of action exists, on the basis that self-insurers need not comply with the act because it applies only to "liability policies of insurance," which self-insurers do not possess.[1]

Of the court which decided Johnson, only the three dissenters still sit, nevertheless, the doctrine that the Johnson majority espoused remains the law of the Commonwealth, as evidenced by its reaf-

---

1. The Uninsured Motorist Act states in relevant part that: "No motor vehicle *liability policy of insurance* . . . shall be delivered or issued for delivery in this State . . . unless coverage is provided therein . . ." *for the protection of persons against uninsured motorists:* 40 P.S. §2000(a) (Emphasis supplied.)

firmation by the Superior Court in the case of Mitchell v. Philadelphia Electric Company, _____ Pa. Superior Ct. _____, 422 A. 2d 556 (1980). Plaintiff, however, raises a legal argument which was not considered in Johnson or Mitchell—that the Pennsylvania General Assembly, by its passage of the No-fault Act, has mandated that self-insurers provide uninsured motorist coverage. Therefore, it is to that argument which we turn.

Plaintiff explicitly acknowledges at page 3 of her memorandum of law that the facts in the Johnson case closely resemble those here, and implicitly acknowledges that she would be precluded from suing SEPTA under the holding in Johnson. However, plaintiff contends that Johnson no longer controls because of the subsequent enactment of the No-fault Act, which plaintiff construes as requiring self-insurers to provide uninsured motorist protection that is substantially equivalent to the coverage required by the Uninsured Motorist Act to be included in insurance policies. While conceding at page 8 of her memorandum of law that "the No-fault Act does not specifically refer or relate to uninsured motorist coverage," plaintiff finds in the act an implicit requirement of such coverage on the part of self-insurers and, in support of this, points to: (1) the financial arrangements required of self-insurers by the No-fault Act, which plaintiff interprets as encompassing uninsured motorist protection, see 40 P.S. § 1009.104(b); (2) the filing procedure provided for in the same section, which plaintiff views as forcing self-insurers to carry uninsured motorist coverage unless they take advantage of that filing procedure to reject such coverage in writing under the terms of 40 P.S. § 2000(a)(1) and (2), which defendant herein did not do; and (3) the

findings and purposes of the legislature with respect to its passage of the No-fault Act, which evidence a legislative intent to broadly benefit accident victims.

Plaintiff's statutory construction arguments hinge on section 104(b) of the No-fault Act, which reads as follows:

"(b) Self-Insurance. — Self-insurance, subject to approval of the commissioner and department, is effected by filing with the department in satisfactory form:

"(1) a continuing undertaking by the owner or other appropriate person to pay basic restoration benefits and any tort liability required in amounts not less than those required, by subsection (a) of this section, to perform all obligations imposed in accordance with this act, and to elect to pay such added restoration benefits as are specified in the undertaking;

"(2) evidence that appropriate provision exists for prompt and efficient administration of all claims, benefits, and obligations provided in accordance with this act; and

"(3) evidence that reliable financial arrangements, deposits, resources, or commitments exist providing assurance substantially equivalent to that afforded by a contract of insurance complying with this act for payment of no-fault benefits, any required tort liability, and performance of all other obligations imposed in accordance with this act."

Plaintiff's primary argument is that this section demonstrates a legislative intent to require self-insurers to carry uninsured motorist coverage, in that it requires an undertaking of self-insurance to

provide, "assurance substantially equivalent to that afforded by a contract of insurance complying with this act. . . ." 40 P.S. § 1009.104(b)(3). Contracts of insurance, under the terms of the Uninsured Motorist Act, must include uninsured motorist coverage. Plaintiff concludes from this that self-insurance must also contain this coverage.

The difficulty with this argument is that the No-fault Act does not direct self-insurers to pattern their arrangements after insurance policies that comply with the Uninsured Motorist Act, but merely after policies that comply with the No-fault Act. The No-fault Act does not require that insurance companies offer uninsured motorist coverage, and thus it does not require self-insurers to carry such coverage.

This determination undermines plaintiff's two related statutory arguments, because the particular statutory provisions that they are drawn from do not directly and specifically treat the types of insurance protection that self-insurers must furnish. In other words, these two remaining arguments play a relatively major role in support of the major argument just treated, and are insufficient to overcome the weakness we find in the core of plaintiff's primary argument.

The first of these related arguments, like the primary argument, stems from section 104(b); however, it is derived solely from that section's direction that self-insurers file certain documents with the Commonwealth. Plaintiff argues that the legislature prescribed this filing process in order to create a method whereby a self-insurer must file a written rejection of uninsured motorist coverage as provided for in sections 2000(a)(1) and (2) of the

Uninsured Motorist Act,[2] or be obliged to undertake such coverage.

However, the same basic argument was rejected by the Supreme Court in Johnson, supra, at pp. 260-261. The Commonwealth, whether through the Uninsured Motorist Act or the No-fault Act, neither offers to nor requires of self-insurers uninsured motorist coverage. Therefore, nothing exists for self-insurers to reject, and any written rejection of such coverage would be meaningless.

Plaintiff's last argument is that section 102 of the No-fault Act, which lists the findings and purposes of the General Assembly, supports her interpretation of section 104(b). Section 102 does reveal a broad legislative intent to benefit the victims of motor vehicle accidents, however, given the weakness of plaintiff's arguments with respect to section 104(b), the very general language of section 102 does not suggest any legislative desire to require self-insurers to provide uninsured motorist coverage.

Therefore, notwithstanding any reservation with respect to the viability of the Johnson decision due to the changed membership of our Supreme Court, it, as well as Mitchell v. Philadelphia Electric Co., supra, stands as binding precedent constraining this court to sustain defendant's preliminary objections and dismiss plaintiff's claim for failure to state a cause of action.

2. Essentially, these sections state that certain owners and operators of motor vehicles designed for the carriage of passengers or goods: "shall have the right to reject such coverage [meaning uninsured motorist coverage] in writing in which event, such coverage need not be provided in or supplemental to a renewal *policy* where such insured had rejected the coverage in connection with a *policy* previously issued to him by the same insurer." 40 P.S. §§2000(a)(1) and (2). (Emphasis and parenthetical explanation supplied.)