184 N.J. Super. 170 (1981)
445 A.2d 448
AMERICAN NURSES ASSOCIATION, NATIONAL UNION FIRE INSURANCE CO., AND FLORA PANICUCCI, R.N., PLAINTIFFS,
v.
PASSAIC GENERAL HOSPITAL, ESIS, AN I.N.A. CORPORATION CO., THE INSURANCE COMPANY OF NORTH AMERICA, HERMOGENES CICON, M.D., MICHAEL R. RAMUNDO, M.D., FRANK WADE, AN INCOMPETENT BY HIS GUARDIAN AD LITEM JUNE WADE, AND JUNE WADE, INDIVIDUALLY, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Argued October 9, 1981.
Decided November 24, 1981.
*173 Walter E. Monaghan for plaintiffs (Haggerty & Donoghue, attorneys).
John I. Lisowski for defendants Passaic General Hospital and ESIS (Morgan, Melhuish, Monaghan & Spielvogel, attorneys).
Mary B. Rogers for defendant Insurance Co. of North America (Lamb, Hutchinson, Chappell, Ryan & Hartung, attorneys).
MARTIN, J.S.C.
This is a declaratory judgment action, brought pursuant to the Uniform Declaratory Judgment Act, N.J.S.A. 2A:16-50 et seq., seeking a judicial determination of the rights and obligations of the respective parties under disparate policies of insurance. The case is derivative of a medical malpractice action wherein it was alleged that Flora Panicucci, R.N., an employee of Passaic General Hospital (hospital), failed to provide recovery room nursing care in accordance with the accepted standards of nursing practice to Frank Wade subsequent to a surgical procedure performed at the hospital. The malpractice action was settled for $375,000, and it is the apportionment of this recovery under the various insurance contracts which forms the basis of the present suit.
Nurse Panicucci was protected from malpractice liability via two separate avenues of insurance. First, Passaic General Hospital and the Insurance Company of North America (INA) entered into an agreement whereby the hospital's employees would be indemnified for any claims arising out of rendered professional services with $500,000 per claim and $600,000 aggregate limits. Under this agreement the hospital undertook the *174 responsibilities of investigating, defending and settling claims and lawsuits brought against it under the indemnity agreement with INA. The agreement further provided that the hospital would indemnify its employees up to the "self-insured sum" of $100,000, with INA being responsible for any indemnification "in excess of the self-insured's sum." In addition, the agreement claimed to provide only "excess" insurance. Section "D" of the agreement states:
If any employee, authorized volunteer worker or medical staff committee member has another policy or policies covering a loss insured hereunder, the insurance with respect to such loss under this policy shall be excess over the amount set forth as the limit of liability under such other policy or policies.
The second avenue of insurance covering Nurse Panicucci's malpractice liability arises through a policy obtained by the American Nurses' Association (ANA) issued by National Union Fire Insurance Co. National Union's policy provides malpractice coverage up to $200,000 per claim and $600,000 aggregate. This agreement also has an excess clause, contained in Part V, "Conditions," Section D, "Other Insurance," which states:
If a member has valid and collectible insurance for an occurrence covered by this agreement, the protection provided by this agreement shall apply only as excess of such insurance and then only when such insurance is exhausted by payment in settlement of a claim or payment of a judgment.
Note that the excess clauses of INA and National Union are substantially similar in their operation and effect.
The parties have moved for summary judgment, pursuant to R. 4:46-2, seeking the court's determination of the amount of contribution to be made by each of the parties towards the $375,000[1] settlement.
Plaintiffs seek a determination that the hospital is primarily liable for the self-insured sum and that National Union and INA *175 are both equally liable for the remaining balance.[2] Defendants, on the other hand, seek a determination that the National Union policy is primary with respect to the first $100,000 of the loss, and that thereafter the policies of National Union and INA share in the remaining loss on a pro rata basis.
Upon review of the record it is clear that the case is ripe for summary judgment. According to R. 4:46-2, summary judgment should be granted if it is shown to the court that "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." There being no genuine issue of any material fact, it is for the court to decide this case on the applicable law. See Judson v. People's Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1955); Rothman v. Silber, 90 N.J. Super. 22, 33 (App.Div. 1966).
The issue presented is whether a hospital, by providing malpractice protection for its employees within a contract of insurance should be considered as providing other valid and collectible insurance under an excess clause of a separate contract insuring against the same risk of loss. This question, under the factual setting presented, is one of first impression in this State.
Defendants take the position that the hospital's "self-insured sum" is a self-retention or deductible amount, and that such self-insurance is not "insurance" within the meaning of an excess clause. There being no other "valid and collectible insurance" it could be excess to, the coverage provided by ANA's policy to Nurse Panicucci should be deemed primary.
A review of the case law reveals a distinct split of authority as to whether or not "self-insurance" should be regarded as insurance. See, generally, 8A Appleman, Insurance Law and Practice, § 4912 at 508-510 (1981), and cases cited thereunder. In Epmeier v. United States, 199 F.2d 508, 509-510 (7 Cir.1952), the United States Court of Appeals defined insurance as:

*176 ... a contract, whereby, for an adequate consideration, one party undertakes to indemnify another against loss arising from certain specified contingencies or perils. Fundamentally and shortly, it is contractual security against possible anticipated loss. Risk is essential and, equally so, a shifting of its incidence from one to another.
There the court held that the services and labor rendered by an employee to his employer was adequate consideration to render the employer's health and accident plan "insurance," even though no monetary premiums were paid by the employee, so as to entitle the employee to the benefits of the provision of the Internal Revenue Code exempting from taxation amounts received through health insurances. Id. at 510.
Defendants contend that the hospital's self-insurance is not insurance under the Epmeier definition because there is no contract, consideration or multiplicity of parties. The facts of the instant case, however, are analogous to those in Epmeier in that the assumption of risk by the employer and the responsibility for indemnification for any such loss were part and parcel of the compensation payable to the employee by the employer. In other words, the hospital's provision for malpractice protection was supported by consideration, being the employment services and labor rendered. The "contract" requirement is met by both the employment arrangement and the insurance contract between the hospital and INA. Multiplicity of parties is apparent, one party being the indemnitee (the employee) and the others being the indemnitor of the first $100,000 loss (the hospital) and the indemnitor of the remaining loss thereafter (INA).[3]
*177 The question of whether or not an undertaking is insurance turns on its primary object and purpose. N.J. Assoc. Ins. Agents v. Hosp. Serv. Plan, 128 N.J. Super. 472, 479 (App.Div. 1974), rev'd on other grounds 68 N.J. 213 (1975). If its purpose is "indemnity,"[4] as opposed to providing a service, then the undertaking is in the nature of insurance. Id.; California Physicians' Service v. Garrison, 28 Cal.2d 790, 172 P.2d 4, 16 (Sup.Ct. 1946).
This court finds that the "self-insured sum" of the hospital to be in the nature of indemnity and, more specifically, that the undertaking is in the nature of insurance. The agreement between the hospital and INA has as its objective the indemnification of the hospital's employees for losses arising *178 from act connected to their employment. Other indicia of insurance can also be found in their agreement. It is not insignificant that the hospital has undertaken the responsibilities of investigating, defending and negotiating any claims or lawsuits arising under the indemnity agreement. It is well settled that insurers have the obligation to provide a defense for their insureds.[5]Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 512 (1965); West v. Macdonald, 103 N.J. Super. 201, 212 (App.Div. 1953), aff'd 15 N.J. 573 (1954); Comorote v. Massey, 110 N.J. Super. 124, 129 (Law Div. 1970). The hospital has assumed all of the obligations normally undertaken by an insurer, and the fact that it has sought financial backing from INA for claims over $100,000 does not negate the nature of its undertaking. It is apparent that the hospital has made a conscious business decision to indemnify its employees itself up to the $100,000 limit. The excess clause pertaining to INA's obligation was not drafted into the hospital's undertaking, and none will be implied into that agreement by this court. It is basic contract law that an agreement will be construed against its maker, Bouton v. Litton Industries, Inc., 423 F.2d 643, 646 (3 Cir.1970), and more specifically, constructions rendering each applicable contract of insurance operative are favored in the law, Boswell v. Travelers Indem. Co., 38 N.J. Super. 599, 605 (App.Div. 1956); London & Lancashire Ins. Co. v. Government Emp. Ins. Co., 66 N.J. Super. 269, 274 (Ch.Div. 1961).
An insurance policy should be read to afford coverage, to the extent that any fair interpretation will allow. Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 513 (1965); American Legion Tri-County Mem. Hosp. v. St. Paul Fire & Marine Ins. Co., 106 N.J. Super. 393, 397 (App.Div. 1969); Klotz v. Selected Risks Ins. Co., 105 N.J. Super. 1, 5 (App.Div. 1969); Malanga v. Manufacturers *179 Cas. Ins. Co., 49 N.J. Super. 341, 346 (Law Div. 1958), aff'd 28 N.J. 220 (1958).
Having found the hospital's self-insurance clause to be an undertaking of insurance and not merely a self-retention or deductible amount, it is the holding of this court that the hospital, having elected to act as an insurer, is subject to ANA's policy provision referring to "other valid & collectible insurance." One who elects to act as an insurer and assume the responsibilities normally incident to common commercial insurance is also bound by the burdens that would be imposed upon a commercial insurer, and the excess clause of other insurance carriers applies equally to self-insurers in such a situation.
The above holding is consistent with the reasoning of other cases concerning similar issues. In Carolina Cas. Ins. Co. v. Belford Trucking Co., 121 N.J. Super. 583 (App.Div. 1972), a trucking company which rented out the trucks used for its business became a certified self-insurer of the rented trucks which were also protected by an insurance policy (presumably obtained by the lessor) containing an excess clause. The Appellate Division held the self-insurer's liability to be primary and the excess insurance policy's liability to be secondary:
... Belford, a certified interstate carrier [under the Interstate Commerce Act, 49 U.S.C.A. § 315] became primary insurer of the tractor and trailer leased to it by Neighbors, and the plaintiff's policy qualifies as excess coverage only. (cites omitted). This is particularly true where, as here, Belford is self-insured and no policy of insurance is before us for construction. [Id. at 584-585].
In Comorote v. Massey, 110 N.J. Super. 124 (Law Div. 1970), an employer applied for and received a certificate of self-insurance in lieu of the statutorily required auto insurance. The court held that the self-insured employer provided broad form omnibus coverage to employees operating its vehicles, thus treating the self-insured synonymously with one possessing an automobile liability policy. Id. at 128. The court could find "no sound basis" for treating a self-insurer any different from any other insurer in terms of its responsibilities as an insurer. Id. The court reasoned that the self-insurer, by avoiding the burdens of *180 obtaining a policy of insurance, does not escape liability on the coverage that it has agreed and is required to provide. Id. at 127-128.
Authority in other jurisdictions is in accord. In Aetna Cas. & Sur. Co. v. Market Ins. Co., 296 So.2d 555 (Fla.Ct.App. 1974), a car rental company agreed with its insurance carrier to become "self-insured" for the first $25,000 of liability with the carrier being liable for any excess loss up to a limit of $975,000. The lessee was also insured under a policy containing an excess clause. The court held that the self-insurer provided primary coverage and that the lessee's insurance carrier was not required to provide reimbursement for the self-insured amount of the lessor. Id. at 577.
Similarly, in Southern Home Ins. Co. v. Burdette's Leasing, 268 S.C. 472, 234 S.E.2d 870 (Sup.Ct. 1977), a car rental agency was a self-insurer of automobile liability. While operating one of the agency's cars a lessee was involved in an auto accident causing injuries to a third party. The lessee carried an insurance policy which contained the standard excess clause. The lessee's insurance carrier paid damages to the injured party and presented the self-insured rental agency with a claim for reimbursement. The Supreme Court of South Carolina held that self-insurance "substitutes for an insurance," and that the protection that the self-insurer provides does constitute "other valid and collectible insurance" within the meaning of a standard excess clause. Id. 234 S.E.2d at 872.
Defendants point to several cases in other jurisdictions standing for the proposition that self-insurance does not constitute "other valid and collectible insurance." These cases, however, are distinguishable from the case at hand. The instant case differs from Universal Underwriters Ins. Co. v. Marriott Homes, Inc., 286 Ala. 231, 238 So.2d 730 (Sup.Ct. 1970); Allstate Ins. Co. v. Zellars, 452 S.W.2d 539 (Tex.Civ.App. 1970), mod. on other grounds 462 S.W.2d 550 (Tex.Sup.Ct. 1970); American Family Mut. Ins. Co. v. Missouri Power & Light Co., 517 S.W.2d *181 110 (Mo.Sup.Ct. 1975), and United Nat'l Ins. Co. v. Philadelphia Gas Works, 221 Pa.Super. 161, 289 A.2d 179 (Super.Ct. 1972), in many important respects. First, these cases deal with a statutory obligation to provide insurance and a certificate of self-insurance issued in lieu thereof.[6] It is also significant that the hospital is responsible for more than merely undertaking to indemnify a loss which is typically the case with self-insurers. It has undertaken an obligation to investigate, defend and settle any claim or lawsuit arising under the agreement of self-insurance. Note, also, that the public policy favored in New Jersey, regardless of the policy favored in other states, provides that all wrongfully injured persons should have financially responsible persons to look to for damages and, to this end, to treat insurers and self-insurers similarly in the law. See Comorote v. Massey, 110 N.J. Super. 124, 128 (Law Div. 1970). A self-insurer should be bound by the undertaking he agrees to and should not be heard to complain when others contract to only insure loss in excess of that undertaken by the self-insurer. In construing an insurance agreement the court will not rewrite or create a better one than that which was purchased. Kamf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960); Last v. West American Ins. Co., 139 N.J. Super. 456, 460 (App.Div. 1976); Boonton Handbag Co., Inc. v. Home Ins. Co., 125 N.J. Super. 287, 290 (App.Div. 1973).
Defendants also point to broad language from the United States Court of Appeals to the effect that insurance and self insurance are not equivalents in support of the proposition that the hospital's self-insurance is not "other valid and collectible insurance" within the meaning of an excess clause. In United States v. Newton Livestock Auction Market, Inc., 336 F.2d 673 (10 Cir.1964), the Small Business Administration loaned the *182 defendant $120,000 which was secured by mortgages on the property, as well as by guaranty agreements. Although the mortgages required defendant to insure the property after the Small Business Administration (SBA) instituted foreclosure proceedings on the property, defendant defaulted in premium payments and the policy of insurance was terminated. During the course of the proceedings the insurer notified the SBA of the default and inquired as to the question of insurance. The SBA replied that the policy should lapse, and that the government is its own insurer in all cases. A subsequent storm damaged the property, and the trial court held that the SBA was obligated to credit the judgment obtained against the guarantors with a $30,000 loss due to storm damage. In reversing, the Tenth Circuit stated:
Insurance and self-insurance are not equivalents. Insurance exists when a contractual relationship between the insurer and the insured shifts to the insurer the risk of loss of the insured. Self-insurance is the assumption of risk of his own loss by one having an insurable interest. All that the United States did was to elect to bear the risk of possible loss of part of its security. [Id. at 676-677]
While insurance and self-insurance are not equivalents for all purposes in all factual situations, neither are they to be treated totally different under all circumstances. In Newton they were not treated as equivalents since the SBA merely assumed the risk of loss of its own security. Such is not the case in the matter presently before the court. The hospital has not merely "elect[ed] to bear the risk of possible loss of part of its security," but, rather, has voluntarily endeavored to indemnify the loss suffered by another, one of its employees, in any amount up to $100,000. Its agreement with INA contemplates the indemnification of another rather than self-protection from its own loss.
Self-insurance may not be the total equivalent of insurance to the extent that a self-insured may attempt to protect itself from liability exposure due to gaps in coverage afforded by its insurer. However, insurance and self-insurance are equivalents where a self-insurer agrees to indemnify the loss of *183 another as well as investigate, defend and settle any claims or lawsuits arising under the indemnity agreement.
Having held the hospital liable for the first $100,000, a question remains as to the apportionment of the remaining $275,000 of loss. It is the decision of the court that the burden of funding this amount be shared equally by INA on the one hand and ANA and National Union on the other. In Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959), two carriers covered the same loss under "excess" policies, and the court held that since both policies claimed to provide only excess insurance, the excess provisions were mutually repugnant and, as against each other, impossible of accomplishment; therefore, each provision became inoperative and each company was obligated to share in the satisfaction of the settlement. Id. at 562. The court specifically rejected a proration of liability on the basis of the limits of liability of each policy. Having concluded that both insurance carriers stand on equal footing, the court held that equity requires an equal apportionment of the amount of the settlement and expenses. Id. at 564. Accordingly, the insurance carriers in the instant case should share equally in the burden of paying the amount of the settlement above the hospital's primary liability.[7]
For the foregoing reasons, the hospital is held primarily liable for the first $100,000 of the amount of settlement, with INA and National Union equally liable thereafter under their respective excess clauses. Plaintiff's motion for summary judgment is granted as modified by this opinion.
NOTES
[1] The settlement in favor of Frank Wade has been paid as follows: $150,000 by National Union, $125,000 by INA and $100,000 by the hospital. Contributions were made without prejudice to any rights of the parties as against each other that they may wish to assert.
[2] Although in plaintiffs' complaint it is requested that the court find National Union's liability to be secondary as to the coverage provided by INA, their brief concedes that both should share in the loss over $100,000.
[3] Indeed, the indemnitee can be viewed as the third-party beneficiary of the agreement between the hospital and INA. The hospital's agreement with INA to become "self-insurer" in the amount of $100,000 is lacking neither consideration nor multiplicity of parties. The hospital has received INA's financial backing for loss arising from its employees negligence in any amount over $100,000 and under $600,000 in exchange for the insurance premiums charged and the agreement to defend all claims and lawsuits arising under their agreement. Contrary to defendants' contentions, this is not a case like Johnson v. Yellow Cab Co. of Philadelphia, 456 Pa. 256, 317 A.2d 245 (1979), where the Pennsylvania Supreme Court stated, "One who is self-insured does not have a liability policy of insurance. Such a policy is a contract involving at least two parties  an insurer and an insured." Id. at 247. Johnson involved the issuance of a statutorily authorized certificate of self-insurance for coverage purposes in lieu of the statutorily required automobile insurance policy. No policy document, that is, written contract of insurance, was deemed to exist in which to imply required statutory terms against limiting coverage concerning losses caused by uninsured motorists. Johnson did not decide that the statutory certificate of self-insurance, issued in lieu of the required policy of liability insurance, does not provide insurance coverage, nor did Johnson consider the issue of the self-insurer's liability vis-a-vis other insurers of the same risk. Insurance and self-insurance may not be equivalents for all purposes, but a self-insured may be treated as having insurance under certain circumstances. See 6B Appleman, Insurance Law & Practice, § 4298 at 298 (1979).
[4] The term "indemnity" has been defined fully in Westville Land Co. v. Handle, 112 N.J.L. 447 (Sup.Ct. 1934):

Generally speaking, the word "indemnity" is used in two general senses: First, the sense of giving security; and secondly, in the sense of compensating for actual loss or damage. Indemnity springs from contract, express or implied, and it is more specifically defined, in terms of obligation or contractual relationship, as an obligation or duty resting on one person to make good any loss or damage another has incurred, or may incur, while acting at his request or for his benefit ... The contract to indemnify is an original undertaking to save the indemnitee harmless against loss or damage of a specified character which may happen in the future. The liability assumed is not secondary, but primary. [at 450-451]
[5] The fact that the hospital may have contracted all or part of these functions to defendant ESIS, an I.N.A. corporation, does not exculpate it from its contractual undertaking.
[6] The law in New Jersey with respect to the status of a certificated self-insurer is clear. As previously noted, Carolina Cas. Ins. Co. v. Belford Trucking Co., 121 N.J. Super. 583, 584 (App.Div. 1972), has held that a certificated self-insurer is considered a primary insurer vis-a-vis an "excess policy" carrier.
[7] Plaintiffs argue that Prudential Prop. Cas. Ins. Co. v. New Hampshire Ins. Co., 164 N.J. Super. 184 (Law Div. 1978), requires a prorating of the loss on the basis of the limits of liability of each policy. There the court rejected Cosmopolitan because of the unequal footing of the excess clauses of the respective policies due to the difference of conditions which would invoke the excess clause of each policy. Id. at 190. Such is not the case in the instant action. The clauses being substantially similar in operation and effect, the excess policies are deemed to be on equal footing before the law, and equity requires that the excess liability be shared equally.