469 A.2d 1019

**Patricia MODESTA, Appellant,**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1983.

Decided Dec. 21, 1983.

438

Stanley M. Schwarz, Philadelphia, for appellant.

Stanley J. Sinowitz, John F. Smith, III, Philadelphia, for appellee.

Before ROBERTS, C.J., and LARSEN, FLAHERTY, HUTCHINSON and ZAPPALA, JJ.

## OPINION

LARSEN, Justice.

On March 2, 1978, appellant Patricia Modesta was injured when the Southeastern Pennsylvania Transportation Authority (SEPTA) bus in which she was a passenger was struck from behind by an uninsured motorist. On December 17, 1979, appellant demanded arbitration of her uninsured motorist claim with SEPTA. When SEPTA refused to arbitrate, appellant commenced a suit in equity demanding arbitration, uninsured motorist coverage, and judgment in the amount of $50,000.[1] The court of common pleas granted SEPTA's preliminary objection and dismissed appellant's complaint. On appeal, the Superior Court affirmed. *Modesta v. Southeastern Pennsylvania Transportation Authority*, 300 Pa.Super. 6, 445 A.2d 1271 (1982). We granted appellant's petition for allowance of appeal and we now reverse.

---

1. Only appellant's claim for uninsured motorist coverage is at issue here; there is no dispute as to the payment of appellant's basic loss benefits.

In the trial court, SEPTA's sole preliminary objection was that appellant had failed to state a cause of action because SEPTA, as a self-insurer, was not required to provide uninsured motorist coverage. The trial court sustained the objection based upon this Court's 4–3 decision in *Johnson v. Yellow Cab Company*, 456 Pa. 256, 317 A.2d 245 (1974). Appellant first argues that the holding of *Johnson v. Yellow Cab* is "unduly narrow and technical" and that *Johnson v. Yellow Cab* should now be overruled. We agree.

The Uninsured Motorist Act, Act of August 14, 1963, P.L. 909, § 1, as amended, 40 P.S. § 2000, provides that

> (a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto ... for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease....

In *Johnson v. Yellow Cab*, this Court held that the Uninsured Motorist Act does not require self-insurers to provide uninsured motorist coverage because the statute applies only to "liability policies of insurance," and self-insurers do not have or purchase "liability policies of insurance." *Id.*, 456 Pa. at 259, 317 A.2d at 247.

> The purpose of the Uninsured Motorist Act is to
>
> "afford financial recompense to persons who receive injuries ... solely through the negligence of motorists, who, because they are uninsured and not financially responsible, cannot be made to satisfy a judgment." ... [O]ur determination here is in harmony with the view that the "statute evolves from public policy considerations and must be *broadly and liberally construed* to accomplish this purpose...."

*Johnson v. Concord Mutual Insurance Company*, 450 Pa. 614, 619, 300 A.2d 61, 64 (1973) (citations omitted; emphasis in original).

Reading the Uninsured Motorist Act in this light, we have concluded that *Johnson v. Yellow Cab* does not accomplish the purpose of the Act and that it must now be overruled.

■ First, we note that although automobile insurance was not mandatory when *Johnson v. Yellow Cab* was decided, and although the Uninsured Motorist Act only requires those drivers who purchase insurance to carry uninsured motorist coverage, SEPTA has always been required to maintain adequate funds to compensate individuals injured on or by SEPTA buses, either through insurance or self-insurance.[2] This requirement that SEPTA either purchase insurance or self-insure places SEPTA in precisely the same position as a vehicle owner who has purchased a liability policy of insurance: both are required to maintain uninsured motorist coverage under the Uninsured Motorist Act.

■ In addition, the fact that a motor vehicle owner is self-insured does not change or detract from the remedial purpose of the Uninsured Motorist Act: the sole purpose of self-insurance is to relieve self-insurers of the burden of expending their assets on insurance premiums; self-insurance is not a means by which self-insurers may avoid the

2. Article III of the Pennsylvania Urban Mass Transportation Law, Act of January 22, 1968, P.L. 42, No. 8, 55 P.S. §§ 600.301–600.343, added in 1980 (formerly the Metropolitan Transportation Authorities Act, Act of August 14, 1963, P.L. 984, No. 450, as amended, 66 P.S. §§ 2001 *et seq.,* repealed in 1980), the act which governs SEPTA, requires SEPTA to maintain a damage reserve fund "sufficient to provide for the ... satisfaction of all ... claims ... and ... judgments entered against the authority for damage caused by injury to or death of any person ... resulting from the ... operation of the transportation system...." 55 P.S. § 600.338. That section also provides that SEPTA may obtain "insurance coverage or protection, partially or wholly, insuring or indemnifying the authority against loss or liability on account of injury to, or death of any person ... resulting from the ... operation of the transportation system," and 55 P.S. § 600.303(d)(24) grants SEPTA the authority to self-insure.

claims of those individuals for whose protection the insurance laws have been enacted.

■ Accordingly, we hold that SEPTA is required to maintain uninsured motorist coverage under the Uninsured Motorist Act even though it is self-insured, and we overrule this Court's decision in *Johnson v. Yellow Cab* to the contrary.

■ Appellant further argues that *Johnson v. Yellow Cab* must also be overruled in light of the passage of the No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, 40 P.S. §§ 1009.101 *et seq.* Although we have no trouble concluding that *Johnson v. Yellow Cab* must be overruled based solely upon the provisions of the Uninsured Motorist Act, we note that the error of that decision has only been amplified since the passage of the No-Fault Act.[3]

Three factors related to the No-Fault Act highlight the unacceptable situation created by this Court's decision in *Johnson v. Yellow Cab:* 1) the No-Fault Act has made insurance mandatory for all owners of motor vehicles, *see* 40 P.S. § 1009.104(a); 2) every policy of insurance issued under the no-fault act must provide for uninsured motorist coverage, *see* 31 Pa.Code § 66.11; and 3) the No-Fault Act provides for insurance coverage, including uninsured motorist benefits, for every victim of an uninsured motorist, either through a policy of insurance or through the no-fault assigned claims plan, *see* 40 P.S. § 1009.108(a), 40 P.S. § 1009.204(a), *Tubner v. State Farm Automobile Insurance Company,* 496 Pa. 215, 436 A.2d 621 (1981).

**3.** The Uninsured Motorist Act relates to persons who own, maintain or use motor vehicles and who purchase insurance for them. The No-Fault Act also relates to persons who own motor vehicles and who must purchase insurance for them. Since both acts relate to the same class of persons and deal with the same subject, they are in pari materia and must be construed together. *See* 1 Pa.C.S.A. § 1932 ("Statutes ... are in pari materia when they relate to ... the same class of persons or things. Statutes in pari materia shall be construed together, if possible, as one statute.").

As a result of these changes brought about by the No-Fault Act and this Court's decision in *Johnson v. Yellow Cab*, until today there were two groups of individuals who received no uninsured motorist protection: uninsured motorists who caused accidents, and uninsured occupants of self-insured vehicles. It is reasonable to deny uninsured motorist coverage to the first group, since they have not only chosen not to comply with the mandatory insurance law, but have also caused the accidents which resulted in their injuries;[4] however, it makes no sense in terms of any policy of deterrence, retribution or liberal construction of a remedial statute, to deny uninsured motorist coverage to uninsured individuals who have not caused the accidents which resulted in their injuries, simply because they were occupants of self-insured vehicles.[5]

Were we to let stand the holding of *Johnson v. Yellow Cab*, an uninsured passenger would receive more complete compensation if he were involved in a ten-car collision in which no one had any insurance than if he were injured by an uninsured motorist while riding on a self-insured SEPTA bus. The uninsured passenger who was injured in the ten-car collision could file a claim with the no-fault assigned claims plan and would receive both no-fault and uninsured motorist benefits. *See* 40 P.S. § 1009.108(a); 40 P.S. § 1009.204(a)(5); *Tubner, supra.*[6] However, the uninsured

---

**4.** In fact, under the Uninsured Motorist Act, the only required insurance is "for the protection of persons ... who are *legally entitled to recover damages from owners or operators of uninsured motor vehicles* ...." 40 P.S. § 2000(a).

**5.** Many persons *cannot* purchase uninsured motorist insurance simply because they do not own automobiles. It is precisely because they do not own their own means of transportation that they must rely upon public transportation providers such as SEPTA. It is particularly unjust to deny these individuals uninsured motorist coverage based not upon any misbehavior on their part, but rather upon their presence in a self-insured vehicle at the time of an accident.

**6.** In *Tubner*, an uninsured individual was killed when the uninsured car in which he was a passenger was hit by an uninsured motorist. Because no policy of basic loss insurance was applicable to the uninsured decedent, a claim was made with the No-Fault assigned claims plan. *See* 40 P.S. § 1009.108. This Court allowed recovery,

passenger who was injured on a SEPTA bus when it was hit by an uninsured motorist would get no uninsured motorist benefits: SEPTA's self-insurance would preclude any claim being made through the assigned claims plan, *see* 40 P.S. §§ 1009.108(a)(1), 1009.204(a)(3); yet applying *Johnson v. Yellow Cab*, SEPTA would not need to honor any claim for uninsured motorist benefits.

It is thus clear that *Johnson v. Yellow Cab* must be overruled, not only to accomplish the remedial purpose of the Uninsured Motorist Act, but also to avoid the anomalous situations which have resulted since the enactment of the No-Fault Act. In fact, the provisions of the No-Fault Act also lead us to conclude that SEPTA must provide uninsured motorist coverage.

The No-Fault Act specifically states that the security covering a motor vehicle may be provided through self-insurance. 40 P.S. § 1009.104(a). The Act provides that

Self-insurance, *subject to approval of the [Insurance] [C]ommissioner and [D]epartment [of Transportation],* is effected by filing with the department in satisfactory form:

(1) a continuing undertaking by the owner ... to pay basic restoration benefits and any tort liability required in amounts not less than those required, by subsection (a) of this section ...;

(2) evidence that appropriate provision exists for prompt and efficient administration of all claims, benefits, and obligations provided in accordance with this act; and

(3) evidence that reliable financial arrangements ... exist providing assurance *substantially equivalent* to

under the assigned claims plan, of uninsured motorist benefits on behalf of the uninsured deceased passenger, stating that

Because assigned insurers are obligated precisely *as if they had issued basic loss insurance policies,* and because *every* policy of basic loss insurance issued in Pennsylvania *must include uninsured motorist coverage,* the right to uninsured motorist benefits under the assigned claims plan follows *a fortiori* from a straightforward reading of the statute and the regulation lawfully promulgated thereunder.

496 Pa. at 219–20, 436 A.2d at 623 (emphasis in original).

that afforded by a contract of insurance complying with this act for payment of no-fault benefits, any required tort liability, and performance of all other obligations imposed in accordance with this act.

40 P.S. § 1009.104(b) (emphasis added).

 Under the No-Fault Act, the owner of a motor vehicle must insure that vehicle either by purchasing a policy of insurance or by qualifying as a self-insurer. 40 P.S. § 1009.104(a). The approval which a self-insurer receives from the Insurance Commissioner and the Department of Transportation is, therefore, simply a substitute for the policy of insurance which the vehicle owner would otherwise have to buy in order to comply with the No-Fault Act. In fact, the approval received by the self-insurer serves the same function as the liability policy of insurance which an individual purchases: both indicate that the vehicle owner intends to comply with the mandatory insurance law, and both indicate that there is security in at least the amounts required by statute covering the vehicle. Thus, the approval received by a self-insurer allowing it to self-insure is the equivalent of a "liability policy of insurance" within the meaning of the Uninsured Motorist Act, and yet another justification for our holding that self-insurers are required to provide uninsured motorist coverage.[7]

7. The propriety of this conclusion is supported by the No-Fault Act and regulations promulgated thereunder. This Court has held that Every policy of basic loss insurance issued in this Commonwealth must include all coverage mandated by the No-Fault Act and by the Insurance Department Regulations validly promulgated thereunder. Section 104(a) of the Act requires, *inter alia,* policy coverage for basic loss benefits and for indemnification in the event of liability for general damages. Insurance Department Regulation [66.11] ... additionally requires uninsured motorist coverage providing for payment of general damages to an insured party injured by an uninsured motorist:

§ [66.11]. Required motor vehicle insurance.

(a) In addition to the coverage required in section 104(a) of the act (40 P.S. § 1009.104(a)), coverage shall include uninsured motorist coverage in limits of $15,000 per person, $30,000 per accident....

31 Pa.Code § [66.11].

*Tubner, supra,* 496 Pa. at 219, 436 A.2d at 622–23 (footnotes omitted).

■ The order of the Superior Court is reversed and the case is remanded for further proceedings consistent with this opinion.[8]

NIX and McDERMOTT, JJ., did not participate in the consideration or decision of this case.

HUTCHINSON, J., concurred in the result.

Because self-insurers are required to provide assurance *substantially equivalent* to that afforded by a no-fault contract of insurance for the performance of all obligations imposed in accordance with the No-Fault Act, a self-insurer must provide uninsured motorist coverage; failure to provide uninsured motorist coverage would provide *less* assurance than that afforded by a contract of insurance issued in accordance with the No-Fault Act and the regulation promulgated thereunder, in violation of § 104(b)(3) of the Act.

8. In connection with this appeal, SEPTA has filed with this Court a Motion to Strike Evidence Presented by Appellant for the First Time on Appeal. At issue is a copy of a letter from The Travelers Insurance Company dated May 19, 1983, denying appellant's claim for uninsured motorist benefits through the no-fault assigned claims plan. SEPTA seeks to strike this letter because appellant has never made it a part of the record in this case and because her failure to do so calls into question the letter's authenticity, relevance and validity. Nevertheless, SEPTA fails to state how or that it has been harmed in any way by the presentation of this letter to this Court, nor does SEPTA actually allege that the letter is not authentic. Further, the information contained in this letter in no way forms the basis for this Court's resolution of this appeal. Accordingly, SEPTA's motion to strike is denied.