70548, 70549. TWYMAN v. ROBINSON (two cases).
(337 SE2d 375)

BANKE, Chief Judge.

R. L. Twyman and Lucille Twyman filed separate suits against Rickie Bernard Robinson to recover for injuries they allegedly sustained when an automobile being driven by R. L. Twyman and occupied by Lucille Twyman as a passenger collided with a car being driven by Robinson. At the time of the collision, R. L. Twyman was a member of Atlanta Car For Hire Association, Inc. As such, he paid the Association a monthly fee of $100, in part for the purpose of securing insurance coverage on the vehicle in which he and Lucille were riding at the time of the collision. Atlanta Car For Hire Association, Inc., is registered with the Georgia Insurance Commissioner's Office as an approved self-insurer and has been issued a "self-insurance certificate" by the Department of Public Safety. It is asserted by Mr. Twyman in his brief that he was issued a card by the Association certifying that the vehicle was insured.

Believing the defendant, Mr. Robinson, to be an uninsured motorist and Atlanta Car For Hire Association, Inc., to be liable for uninsured motorist benefits under the self-insurance arrangement, the plaintiffs caused copies of their complaints to be served on the Association. These appeals are from orders granting summary judgment to the Association in each case, based on the court's conclusion that self-insurers are not required by law to provide uninsured motorist benefits. *Held*:

The term "self-insurer" is defined by OCGA § 33-34-2 (12) to mean "any owner who has on file with the Commissioner of Public Safety an approved plan of self-insurance which provides for coverages, benefits, and efficient claims handling procedures substantially equivalent to those afforded by a policy of automobile liability insurance that complies with all of the requirements *of this chapter*." (Emphasis supplied.) See also OCGA § 40-9-101 (a). The statutory

requirement concerning the provision of uninsured motorist coverage does not, however, appear in Chapter 34 of Title 33 but in Chapter 7. Specifically, the provision is found in OCGA § 33-7-11, which provides, in pertinent part, as follows: "(a) (1) No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . ."

Because Atlanta Car for Hire Association, Inc. did not, as a self-insurer, issue or deliver any policy or contract of motor vehicle liability insurance to Mr. Twyman, we must agree with the trial court that this code section imposed no requirement on the Association to provide him with uninsured motorist coverage on the vehicle. Unfortunate though this result may be, we are without authority to disregard the plain language of the statute and to create a liability for benefits where none has been contracted for or legislated. Accord *Mountain States Telephone &c. Co. v. Aetna Cas. & Surety Co.*, 116 Ariz. 225 (568 P2d 1123) (1977); *O'Sullivan v. Salvation Army*, 147 Cal. Rptr. 729 (Cal. App. 1978); *Jordan v. Honea*, 407 S2d 503 (La. App. 1981). Although the plaintiffs urge that the foregoing authorities are inapposite because the vehicle at issue in the present case was owned by Mr. Twyman personally rather than by the Association, we are cited to no supporting evidence for this assertion in the record; and the case was clearly litigated below on the mutual assumption that whatever liability the Association had was as a self-insurer, rather than as an indemnitor. Consequently, we do not consider what result might obtain were it shown that the Association had undertaken to provide insurance on a vehicle which was not in fact owned by it or registered in its name.

*Judgment affirmed. McMurray, P. J., Birdsong, P. J., Carley, Sognier, and Beasley, JJ., concur. Deen, P. J., Pope and Benham, JJ., dissent.*

BENHAM, Judge, dissenting.

I am compelled to dissent because I do not agree with the majority's conclusion that a self-insurer is not required to provide uninsured motorist coverage.

The purpose of the uninsured motorist statute (OCGA § 33-7-11) "is to require some provision for first-party insurance coverage 'to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers.'

[Cit.] Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose. [Cits.]" *Smith v. Commercial Union Assur. Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980); *Maryland Cas. Co. v. Rhoden*, 170 Ga. App. 704, 705 (318 SE2d 175) (1984). Any motor vehicle liability policy issued or delivered in this state must provide uninsured motorist coverage. OCGA § 33-7-11 (a) (1). The majority opinion places an unduly narrow and oppressive interpretation on the Act and fails to take properly into consideration the purpose of the uninsured motorist statute as outlined above.

Under the Georgia Motor Vehicle Accident Reparations Act (OCGA § 33-34-1 et seq.), the owner of a motor vehicle must insure that vehicle by purchasing a policy of insurance or by qualifying as a self-insurer. See OCGA § 33-34-10 (a) (1). One who wishes to be self-insured must receive the approval of and a certificate of self-insurance from the department. OCGA § 40-9-101 (a). The certificate, signifying the department's approval of the applicant's financial ability to meet the requirements of the Motor Vehicle Accident Reparations Act, is "simply a substitute for the policy of insurance which the vehicle owner would otherwise have to buy in order to comply with the . . . Act. In fact, the approval received by the self-insurer serves the same function as the liability policy of insurance which an individual purchases: both indicate that the vehicle owner intends to comply with the mandatory insurance law, and both indicate that there is security in at least the amounts required by statute covering the vehicle. Thus, the approval received by a self-insurer allowing it to self-insure is the equivalent of a 'liability policy' . . . within the meaning of the [u]ninsured [m]otorist [statute] . . ." *Modesta v. Southeastern Pa. Transp. Auth.*, 503 Pa. 437 (469 A2d 1019, 1024) (1983). See also *Transport of N. J. v. Watler*, 79 N. J. 400 (400 A2d 61) (1979); *Unigard Ins. Co. v. Columbus Green Cabs*, 67 Ohio App. 2d 152 (426 NE2d 200) (1980). Inasmuch as the certificate of self-insurance is the equivalent of a policy of insurance and is issued and delivered in this state, I conclude that a self-insured's coverage must include uninsured motorist coverage. OCGA § 33-7-11 (a) (1).

The result I reach comports with the purpose of the uninsured motorist as well as the self-insurer legislation. While self-insurers may be relieved of the burden of expending assets on insurance premiums, they cannot avoid the claims of the individuals for whose protection the motor vehicle insurance laws have been enacted. *Modesta*, supra at 1022.

I am authorized to state that Presiding Judge Deen and Judge Pope join in this dissent.

DECIDED OCTOBER 16, 1985 —
REHEARING DENIED NOVEMBER 4, 1985 — 

*Frank J. Klosik, Jr., Frederick M. Valz III*, for appellants.
*William A. Dinges, William D. Strickland*, for appellee.