**Sara WILLIAMS**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.**

**Civ. A. No. 90–6744.**

United States District Court, E.D. Pennsylvania.

April 19, 1991.

Howard M. Goldsmith and L. Bruce Hoffman, Philadelphia, Pa., for plaintiff.

Thomas B.K. Ringe, III, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Plaintiff Sara Williams ("Williams"), a resident of Pennsylvania, originally brought suit against her insurance company, State Farm Mutual Automobile Insurance Company ("State Farm"), in the Court of Common Pleas of Philadelphia County. The matter was then removed, on October 19, 1990, by defendant State Farm, based upon the diversity jurisdiction of this court. 28 U.S.C. § 1332. Plaintiff Williams claims that defendant State Farm has refused to honor her claims arising out of three separate automobile accidents, in Pennsylvania, on April 9, 1988, June 14, 1988 and October 25, 1988. Plaintiff Williams's complaint contains three counts:

Count I is based upon an alleged breach of contract to pay reasonable and necessary medical expenses under the Pennsylvania Motor Vehicle Financial

Responsibility Law, 75 Pa.Cons.Stat.Ann. § 1711 (Purdon Supp.1990), and seeks compensatory damages of $18,180.00, costs of $3,832.25, 12% interest, as well as additional costs of suit and attorneys fees.

**Count II** is based upon alleged unfair acts and deceptive practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat.Ann. tit. 73, §§ 201-1 *et seq.* (Purdon Supp.1990), and seeks treble damages, as well as attorneys fees, interest and costs.

**Count III** is based upon alleged willful, wanton and malicious conduct in violation of recent amendments to the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. § 1701–1798, and seeks damages in excess of $20,000.00, as well as punitive damages, attorneys fees, interest and costs.

Defendant State Farm has moved for judgment on the pleadings on Counts II and III under Fed.R.Civ.P. 12(c). We shall grant this motion and, on our own motion, will remand to the Philadelphia Court of Common Pleas for lack of jurisdiction under 28 U.S.C. § 1447(c).

The pleadings are closed and factual matters outside the pleadings have not been submitted.[1] Therefore, the standard of a Fed.R.Civ.P. 12(b)(6) motion to dismiss will be applied to this motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). *Republic Steel Corp. v. Pennsylvania Engineering Corp.,* 785 F.2d 174, 182 (7th Cir.1986); *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1038 (6th Cir.1979); *Harris v. WGN Continental Broadcasting Co.,* 650 F.Supp. 568 (N.D.Ill.1986).

Fed.R.Civ.P. 12(b)(6) allows a court to dismiss "for failure to state a claim upon which relief can be granted." The criteria which a court must use in deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6) are clear. "In reviewing a motion to dis-

miss a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Wisniewski v. Johns Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985); *Rogin v. Bensalem Twp.,* 616 F.2d 680, 685 (3d Cir. 1980)." *Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). Also, "in deciding a Rule 12(b)(6) motion, factual allegations of the complaint are to be accepted as true and the complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved. Reasonable factual inferences will be drawn to aid the pleader. *Amalgamated Transit Union v. Byrne,* 568 F.2d 1025, 1031 (3d Cir.1977) (in banc) (Aldisert, J., dissenting); *Knuth v. Erie–Crawford Dairy Cooperative Ass'n,* 395 F.2d 420 (3d Cir.1968)." *D.P. Enterprises v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984).

When federal courts sit in diversity cases, they must apply the substantive law of the states where they sit. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When they are required to interpret or apply state law, they must consider and accept the decisions of the state's highest court as the ultimate authority regarding state law.[2] *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 n. 3 (3d Cir.1985); *Connecticut Mutual Life Insurance Co. v. Wyman,* 718 F.2d 63, 65 (3d Cir.1983).

We begin our review of the laws of Pennsylvania with the Act of July 22, 1974, P.L. 589, No. 205, Pa.Stat.Ann. tit. 40, §§ 1171.1 *et seq.* (Purdon Supp.1990), called the "Unfair Insurance Practices Act." Section 4 of this Act, Pa.Stat.Ann. tit. 40, § 1171.4, prohibits "unfair" or "deceptive" acts or practices in the insurance business. Section 7 of the Act, Pa.Stat.Ann. tit. 40, § 1171.7, empowers the Insurance Commis-

---

1. Plaintiff has attached voluminous non-verified exhibits to her brief which do not alter the applicable law in this case.

2. Neither party disputes the applicability of the law of Pennsylvania where plaintiff Williams resides and where the accidents took place.

sioner of Pennsylvania to investigate persons in the insurance business, and section 9 of the Act, Pa.Stat.Ann. tit. 40, § 1171.9, empowers the Commissioner to impose sanctions. Nowhere in the Act is there any express language authorizing private suits.

In *D'Ambrosio v. Pennsylvania National Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981), the court was faced with a private suit against an insurer for failure to pay a claim. Plaintiff sought punitive damages for alleged willful, wanton, outrageous, oppressive and malicious conduct, as well as compensatory damages for anxiety, mental distress, loss of professional standing, embarrassment and humiliation. The court stated, 431 A.2d at page 970, that:

> There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the Unfair Insurance Practices Act must be supplemented by a judicially created cause of action. As one critic of California's approach has observed,
>
> > '[t]he California courts have created this "new tort" in an obvious attempt to afford more protection to insureds. However, it has not really been established that there is a need of this additional protection. * * * State insurance departments are intended to serve the public and handle complaints from insureds as to insurer practices on a regular basis. Likewise, state legislatures are capable of prohibiting what are considered to be unfair claims handling practices and of imposing penalties for violations.'
>
> Kircher, Insurer's Mistaken Judgment—A New Tort?, 59 Marq.L.Rev. 775, 786 (1976). Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the Legislature to determine whether sanctions beyond

those created under the Act are required to deter conduct which is less than scrupulous.

> Our conclusion that the Unfair Insurance Practices Act serves adequately to deter bad faith conduct applies not only to appellant's attempt to recover punitive damages but also to his attempt to recover for emotional distress.... Thus we hold that the count in trespass for alleged bad faith conduct of an insurer, which seeks both punitive damages and damages for emotional distress, must be rejected.

This court has followed the *D'Ambrosio* majority opinion and reached a similar result in *Layton v. Liberty Mutual Fire Insurance Company*, 577 F.Supp. 1 (E.D. Pa.), *aff'd*, 725 F.2d 668 (3d Cir.1983). *See also DeMola v. Agency Rent A Car*, 1989 WL 11749, 1989 U.S.Dist. LEXIS 1464 (E.D.Pa.) (Bechtle, J.); *Gniewek v. State Farm Insurance Co.*, 1989 WL 79772 (E.D. Pa.) (Newcomer, J.); *Linaras v. Bituminous Casualty Corporation*, 1988 WL 45413, 1988 U.S.Dist. LEXIS 4020 (E.D.Pa.) (Shapiro, J.); *Scicluna v. The Hartford Fire Ins. Co.*, 1988 WL 16981, 1988 U.S. Dist. LEXIS 1381 (E.D.Pa.) (Weiner, J.).

Plaintiff Williams's entire Count II is based upon the Pennsylvania "Unfair Trade Practices and Consumer Protection Law" Act of December 17, 1968, P.L. 1224, No. 387, Pa.Stat.Ann. tit. 73, §§ 201–1 *et seq.*, which was amended by the Act of November 24, 1976, P.L. 1166, No. 260. As amended, Section 3 of the Act, Pa.Stat.Ann. tit. 73, § 201–3 (Purdon Supp.1990), prohibits a wide range of deceptive acts and practices, and Section 9.2 of the Act, Pa.Stat. Ann. tit. 73, § 201–9.2, now permits private actions for violations of the Act. This section also permits a court to award treble damages. The Supreme Court did not expressly mention the Unfair Trade Practices and Consumer Protection Law in *D'Ambrosio*.[3] They did state, however, that it was

---

**3.** *Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986), *appeal denied*, 516 Pa. 635, 533 A.2d 93 (1987) and *Hardy v. Pennock Insurance Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471 (1987) are Pennsylvania Superior Court decisions which would have allowed an insured to pro-

ceed against an insurer for an alleged violation of the Unfair Trade Practices and Consumer Protection Law. These decisions, as decisions of an intermediate state appellate court, are not binding upon us. Our reading of the only case that can bind us, *D'Ambrosio,* 494 Pa. 501, 431

"for the Legislature to determine whether sanctions beyond those created under the Unfair Insurance Practices Act" are required. Until the Legislature changes the situation, the Unfair Insurance Practices Act offers the exclusive remedy for alleged improper or tortious conduct by an insurer. This court so found in *Layton*, 577 F.Supp. 1, and *Gniewek*, 1989 WL 79772. Accordingly, plaintiff's Count II must be stricken with prejudice.

 This brings us to plaintiff's Count III and the development of the Pennsylvania Motor Vehicle Financial Responsibility Law by the state legislature in the period following the *D'Ambrosio* decision. The Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. §§ 1701–1798 (Purdon Supp.1990), became effective October 1, 1984. It provided a mandatory program of liability insurance for motor vehicles with a limited "no-fault" program. Under Subchapter B of the Financial Responsibility Law, an insurer "issuing or delivering liability insurance policies covering any motor vehicle of the type required to be registered under" title 75 had to include certain minimum benefits. 75 Pa.Cons.Stat.Ann. § 1711. These include a "medical benefit in the amount of $10,000"; an "income loss benefit" of $1,000/month, to a maximum of $5,000; and a "funeral benefit." *Id.*

The statute defines "medical benefit" as follows:

> An insurer ... shall make available for purchase, first party benefits with respect to injury arising out of the maintenance or use of motor vehicle as follows:
>
> > (1) Medical Benefit—Coverage to provide for reasonable and necessary medical treatment and rehabilitative services ...

75 Pa.Cons.Stat.Ann. § 1712.

Before the passage of the Act of February 7, 1990, P.L. ___, No. 1990–6 ("Act 6"), the Pennsylvania Motor Vehicle Financial Responsibility Law had no specific procedure for evaluating claims. The law generally stated that an insurer's obligation to pay claims for medical benefits was triggered only when the insured submitted "reasonable proof" of the amount of benefits due. *See* 75 Pa.Cons.Stat.Ann. § 1716. If an insurer refused to pay benefits, the insured could bring a civil action. In such an action, the insured could receive not only benefits wrongfully withheld, but also interest at an annual rate of 12%, commencing thirty days after the insurer received "reasonable proof" of the amount of benefits due. 75 Pa.Cons.Stat.Ann. § 1716. In addition, the insured was entitled to an award of attorney fees if the insurer acted in bad faith in refusing to pay benefits. *Id.;* 75 Pa.Cons.Stat.Ann. § 1798(b). Punitive damages were not expressly provided for and were, therefore, prohibited by the *D'Ambrosio*, 431 A.2d 966, decision.

The Pennsylvania legislature substantially amended the Pennsylvania Motor Vehicle Financial Responsibility Law in Act 6. Among its changes, Act 6 substantially modified the statutory requirements for coverage of an insured and codified a detailed procedure for the review and payment of claims by an insured. Act 6, Section 18, amended 75 Pa.Cons.Stat.Ann. § 1797 to provide statutory approval for the use of Peer Review Organizations ("PRO") to evaluate claims. The amended procedures have an effective date of April 15, 1990. *See* Act 6, § 32(2) (establishing effective dates for various provisions in the Act).

Under the revised procedures, a medical care provider "may not bill an insured directly, but must bill the insurer for a determination of the amount payable." 75 Pa. Cons.Stat.Ann. § 1797(a) (as amended). Insurers are now required to contract with "peer review organizations"[4] for the pur-

---

A.2d 966, convinces us that, in the view of the Pennsylvania Supreme Court, an insured is relegated exclusively to the remedies set forth in the Unfair Insurance Practices Act for any bad faith misconduct on the part of the insurer. Furthermore, we believe that the remedies which the Superior Court attempts to provide are inconsistent with the most recently enacted amendments of Pennsylvania's Motor Vehicle Financial Responsibility Law, discussed *infra.*

**4.** A "peer review organization" or "PRO" is defined as "any Peer Review Organization with which the Federal Health Care Financing Ad-

pose of "confirming that treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 Pa. Cons.Stat.Ann. § 1797(b)(1) (as amended). If an insurer timely requests a peer review, the insurer has no obligation to pay the medical care provider until the review is finished.[5]

The amendments to the Pennsylvania Motor Vehicle Financial Responsibility Law also expanded the remedies available to medical care providers and insureds. If a PRO determines that questioned medical treatment, services, or supplies were medically necessary, the insurer must pay the outstanding amount plus interest at 12% per year.[6] 75 Pa.Cons.Stat.Ann. § 1797(b)(5) (as amended). If an insurer denies a claim without requesting a PRO, the provider (or the insured) is authorized to bring a civil action to have the court determine the reasonableness and necessity of treatment. 75 Pa.Cons.Stat.Ann. § 1797(b)(4) (as amended). If the court finds that the treatment was medically necessary, the insurer must pay the outstanding amount, *plus* 12% interest, *plus* attorneys fees and costs. 75 Pa.Cons.Stat.Ann. § 1797(b)(6) (as amended). In addition, the amendments provide for punitive damages; if the court finds the insurer's conduct is "considered to be wanton", the insurer "shall be subject to a payment of treble damages to the injured party." 75 Pa. Cons.Stat.Ann. § 1797(b)(4) (as amended).

In addition to amending the Pennsylvania Motor Vehicle Financial Responsibility Law, Act 6 amended several other titles of the Pennsylvania Consolidated Statutes. Section 1 expanded the list of crimes subject to the Pennsylvania Racketeering Law, 18 Pa.Cons.Stat.Ann. § 911 (Purdon 1983),

and section 2 added a new crime, Motor Vehicle Insurance Fraud, to Title 18. Section 3 of the Act added a new section to Title 42 (Judiciary and Judicial Procedure) as follows:

§ 8371 Actions on Insurance Policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorneys fees against the insurer.

Although it generally applies to actions under insurance policies, this new section does not expressly state whether or not it applies to claims by an insured under the Pennsylvania Motor Vehicle Financial Responsibility Law. Moreover, this new section appears, on its face, to be inconsistent and in conflict with the detailed procedures and remedies the legislature has mandated for claims by an insured in the Pennsylvania Motor Vehicle Financial Responsibility Law. In determining the scope and applicability of a statute, the goal of a reviewing court is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.Cons.Stat.Ann. § 1921 (Purdon Supp. 1990). In ascertaining legislative intent, a statute should be construed to give effect to all its provisions, if possible. *Id.* It is also assumed that the General Assembly does not intend a result that is absurd or

---

ministration or the Commonwealth contracts for medical review of Medicare and medical assistance services, or any health care review company, approved by the [Insurance] commissioner, that engages in peer review for the purpose of determining that medical and rehabilitation services are medically necessary and economically provided." 75 Pa.Cons.Stat.Ann. § 1702 (as amended).

5. An insurer must request a review within 90 days of the insurer's receipt of the provider's

bill, unless there is continuing treatment or services. 75 Pa.Cons.Stat.Ann. § 1797(b)(1) (as amended). To defer payment, the insurer must challenge the bill within 30 days of its receipt. 75 Pa.Cons.Stat.Ann. § 1797(b)(3) (as amended).

6. Under the prior law, the insurer's liability for interest did not arise until 30 days after the insurer received "reasonable proof" of the amount of benefits due. 75 Pa.Cons.Stat.Ann. § 1716.

unreasonable. *Zimmerman v. O'Bannon*, 497 Pa. 551, 442 A.2d 674 (1982). In ascertaining legislative intent, the practical results of a particular interpretation may be considered. *Lehigh Valley Co-op Farmers v. Commonwealth Bureau of Employment Security*, 498 Pa. 521, 447 A.2d 948 (1982). In addition, the legislature is presumed to have intended to avoid mere surplusage in a statute. *Habecher v. Nationwide Insurance Co.*, 299 Pa.Super. 463, 445 A.2d 1222 (1982).

Finally, specific legislative provisions will prevail over inconsistent general provisions that might arguably cover the same matter:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provision shall prevail and be construed as an exception to the general provision....

1 Pa.Cons.Stat.Ann. § 1933 (Purdon Supp. 1990).

Accordingly, it would appear that § 8371 created by Act 6 does not apply to claims by an insured under the Pennsylvania Motor Vehicle Financial Responsibility Law. We are compelled to find that even if this was not so, § 8371 still could not apply to Count III in this case. Act 6 contains *no* language indicating that § 8371 is to be applied retroactively. Quite the contrary, the effective date of § 8371 is July 1, 1990, some six months *after* Act 6 was enacted.[7]

Plaintiff Williams's complaint alleges that she had coverage under State Farm policies when she had her accidents on April 9, 1988, June 14, 1988 and October 25, 1988, which was well before the effective date of § 8371. Plaintiff Williams gave notice of these accidents on April 14, 1988, June 16, 1988 and November 22, 1988. Plaintiff filed her applications for benefits with defendant State Farm on May 5, 1988,

August 1, 1988 and January 13, 1989. All of these dates are well before July 1, 1990. The same would be true of the denial of coverage. According to plaintiff's complaint, she has made repeated demands for payment, all of which have been refused. The first of these would amount to a breach for the purposes of determining whether or not the breach took place before or after July 1, 1990. Plaintiff's complaint was verified in September, 1990. *See Wazlawick v. Allstate Ins. Co.*, 1990 WL 294273, 1990 U.S.Dist. LEXIS 15986 (E.D.Pa.) (Kelly, J.) (holding that the denial of coverage is the action which determines whether 42 Pa.Cons.Stat.Ann. § 8371 applies). Her cause of action then, to the extent she has alleged one, arose before the effective date of § 8371. Applying § 8371 in this case would, therefore, involve a retroactive application of § 8371, in violation of the intent of the legislature.

The Pennsylvania rules of statutory construction state: "No statute shall [be] construed to be retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa.Cons.Stat.Ann. § 1926 (Purdon Supp.1990). Pennsylvania statutes are presumed to apply *prospectively*, unless a legislative intent to the contrary is unmistakably clear. *See, e.g., R&P Service, Inc. v. Commonwealth Dept. of Revenue*, 116 Pa.Commw. 230, 234, 541 A.2d 432, 434 (1988). In the absence of specific language that a statute will be retroactive, it will apply only prospectively. *Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983). In *Krenzelak*, the Pennsylvania Supreme Court stated that " 'where the language of the statute is general, and might be given both retroactive and prospective operation, it will, under this principle [1 Pa.Cons.Stat.Ann. § 1926], be held to be prospective only'." *Krenzelak*, 469 A.2d at 990 (*quoting Commonwealth v. Greenawalt*, 347 Pa. 510, 512, 32 A.2d 757, 758 (1943)). *See also Bryant v. Liberty*

---

**7.** Section 32 of Act 6 contains eight subsections listing the effective dates of the various sections of the Act. The first seven subsections list effective dates for specific sections of the Act. 42 Pa.Cons.Stat.Ann. § 8371 is not included in this list. Subsection (8) contains the effective date for all other parts of Act 6, including 42 Pa. Cons.Stat.Ann. § 8371: "(8) The remainder of this act shall take effect July 1, 1990."

**128**

*Mutual Ins. Co.*, No. 90–5637 slip op., 1990 WL 223126 (E.D.Pa., Dec. 19, 1990) (Hutton, J.); *Wazlawick*, 1990 WL 294273, 1990 U.S.Dist. LEXIS 15986.

Accordingly, sec. 3, § 8371 of Act 6 cannot apply to plaintiff's Count III and this count must be stricken with prejudice. This leaves only Count I which, by any fair test, no longer appears to meet the $50,000.00 jurisdictional threshold of 28 U.S.C. § 1332. Accordingly, we must remand to the Court of Common Pleas of Philadelphia County for lack of jurisdiction under 28 U.S.C. § 1447(c).

An appropriate order follows.

### ORDER

AND NOW, this 19th day of April, 1991, Counts II and III of Plaintiff's Complaint are hereby DISMISSED WITH PREJUDICE. Accordingly, plaintiff's cause of action consists only of Count I which is remanded to the Court of Common Pleas of Philadelphia County for failure to meet the requisite jurisdictional amount. The Clerk of the Court shall mail a certified copy of this order to the Clerk of the Philadelphia Court of Common Pleas. This case is CLOSED.