## Okkerse v. Prudential Property & Casualty Insurance Co.

*David R. Black,* for plaintiff.
*David M. McCormick,* for defendant.

Sugerman, *J.,* June 17, 1992—The appellant, Lynn Okkerse, an incompetent by her guardian, Douglas J. Okkerse (hereinafter, the plaintiff) filed an amended complaint against the appellee, Prudential Property & Casualty Insurance Co. The plaintiff's amended complaint, setting forth seven counts, alleges in essence that Lynn Okkerse, while insured under an insurance policy issued by Prudential under the Pennsylvania No-Fault Motor Vehicle Insurance Law, 40 P.S. §1009.101, et seq., (repealed), suffered catastrophic injuries in an automobile accident on June 3, 1983. The amended complaint further alleges that since the date of the accident, Ms. Okkerse has received medical care and therapy paid for by Prudential pursuant to the insurance policy in force at the date of the accident. The complaint finally alleges that Prudential

advised Mr. Okkerse that as of August 1, 1991, it would no longer pay for much of her therapy and nursing care. The amended complaint seeks damages in a variety of forms including a declaratory judgment declaring that Prudential has a continuing duty to pay for Ms. Okkerse's therapy and nursing care.

Prudential filed preliminary objections in the nature of a motion to strike Counts III, IV, V, VI and VII of the amended complaint. By order dated April 27, 1992, we sustained Prudential's preliminary objections and struck the said counts. The plaintiff did not ask for leave to amend and we did not grant such leave. In any event, the plaintiff has appealed our order striking the aforesaid counts of her amended complaint and we write briefly in response to the mandate of Pa.R.A.P. 1925(a).

## COUNT III

In Count III of her amended complaint the plaintiff seeks counsel fees, both past and future, incurred and to be incurred as the result of the instant litigation to recover first-party benefits under Prudential's insurance policy.

We note that in Count II of her amended complaint, the plaintiff seeks first-party benefits under the No-Fault Act. The Act itself provides for a recovery of counsel fees if the court determines that the insurer has "denied the claim or any significant part thereof without reasonable foundation...." 40 P.S. 1009.107(3); *Freeze v. Donegal Mutual Insurance Co.,* 412 Pa. Super. 305, 603 A.2d 595, 597-600 (1992); *Solomon v. Sentry Insurance Co.,* 324 Pa. Super. 329, 471 A.2d 863, 865-66 (1984). Inasmuch as there is a statutory remedy available permitting the plaintiff to obtain counsel fees upon an appropriate showing in addition to first-party benefits, the claim set forth in Count III is merely duplicative of the claim set

forth in Count II. In addition, Count III fails to set forth the conditions precedent to a recovery of counsel fees under the Act. See *Freeze v. Donegal Mutual Insurance Co., supra,* 603 A.2d at 599-602.

## COUNT IV

In Count IV of her amended complaint the plaintiff seeks compensation in the form of "compensatory, consequential and punitive damages ... plus interest, costs of suit, attorneys' fees..." for bad faith on the part of Prudential, citing 42 Pa.C.S. §8371, "Actions on Insurance Policies," became effective on July 1, 1990, and has been a topic of much dispute. The first disputed issue is whether section 8371 applies to insurance contracts that were executed prior to the effective data of the Act. Two members of the U.S. District Court for the Eastern District of Pennsylvania have held that the statute affects the substantive provisions of insurance policies and, as such, "a real question exists as to whether the statute can be applied to any insurance contract executed prior to the July 1990 effective date." *Chamberlain v. State Farm Mutual Auto. Insurance Co.,* 1991 WL 108688 (E.D. Pa.); See also, *Bryant v. Liberty Mutual Insurance Co.,* 1990 WL 223126 (E.D. Pa.).

However, in *American Franklin Life Insurance Co. v. Galati,* 776 F. Supp. 1054 (E.D. Pa. 1991), the court rejected the "substantive provisions" theory and found that the provisions of section 8371 did not have substantive effect and could thus be applied to insurance contracts executed prior to July 1, 1990. The court in *American Franklin, supra,* citing *Coyne v. Allstate Insurance,* 771 F. Supp. 673, 675 (E.D. Pa. 1991), stated that section 8371 "does not alter the insurance policy's substantive requirements, interfere with the insurers contractual rights, or otherwise impair the parties' obligation."

It is clear from both the statute itself and relevant case law that section 8371 has been uniformly held to be prospective in nature. *American Franklin, supra,* 776 F. Supp. at 1063; See also, *Williams v. State Farm Mutual Auto Insurance Co.,* 763 F. Supp. 121, 127 (E.D. Pa. 1991). The dispute appears to be whether an action for bad faith arising out of actions occurring *after* the effective date of section 8371 are prospective if the underlying policy was executed *prior* to the effective date of the statute.

Answering the question set forth in *Bryant* and *Chamberlain, supra,* we find that section 8371 creates a cause of action that did not previously exist, that dramatically alters the extent of an insurance company's potential liability and, as it clearly affects the substantive provisions of a policy, the statute cannot apply to an insurance contract that was executed prior to July 1, 1990. It should be noted that our research revealed no Pennsylvania appellate authority discussing the issue of the application of section 8371 to an insurance contract executed prior to the effective date of the statute.

In further support of our position we find that there is an inherent conflict between section 8371 and the provisions of the No-Fault Act.

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and be construed as an exception to the general provision...." Pa.C.S. §1933 (Supp. 1990).

We thus find that the special provisions of the No-Fault Act, with respect to first-party benefits, prevails over the general provisions of section 8371. The provisions of section 8371 do not expressly state whether the section

applies to claims by an insured under the No-Fault Act and it appears to be inconsistent and in conflict with the detailed provisions and remedies set forth in the No-Fault Act with respect to the unreasonable withholding of first-party benefits. See 40 P.S. §1009.106(a)(2) and 1009.107(3).

The courts of this Commonwealth have consistently held that the sole remedy for the unreasonable delay or denial of benefits under the No-Fault Act based on bad faith and malicious actions is to impose attorney's fees and interest under sections 106(a)(2) and 107(3) of the Act. An action for punitive and exemplary damages is inappropriate. *Jolly v. Nationwide Insurance Co.,* 7 D.&C.3d 797 (1978). The court in *Jolly, supra,* cited the U.S. District Court for the Western District of Pennsylvania in *O'Shanick v. Allstate Insurance Co.,* 431 F. Supp. 382, 384 (W.D. Pa. 1977), wherein the court held that it was "apparent that the Pennsylvania Legislature has provided in *specific, detailed language* for the rights, duties and liabilities of all parties involved in no-fault cases, including the eventuality of non-payment by an obligor by providing *specific penalties* in the event payment is not made within 30 days. These do not include punitive damages...." (emphasis added)

See also: *Dunye v. Insurance Co. of North America,* 24 D.&C.3d 342 (1981) (punitive damages for failure to make payment of basic loss benefits are not recoverable); *Trimiew v. Keystone Insurance Co.,* 10 D.&C.3d 492 (1978) (punitive damages may not be assessed against a no-fault carrier since the remedies of the Act are a claimant's exclusive remedies for his insurer's failure to make timely payments).

The Pennsylvania No-Fault Act does not accord to an insurer the right to refuse payment of benefits until an audit has been conducted and if the insurer unreasonably

withholds payment contrary to the provisions of the Act, the insured is entitled to sanctions by way of 18 percent interest under section 106(a)(2) and attorney's fees and costs under section 107(3). See *Mock v. Nationwide Mutual Insurance Co.,* 40 D.&C.3d 184 (1985).

It is apparent from a review of the relevant authority and the No-Fault Act itself that a specific procedure for the payment of first-party benefits and a specific procedure to deal with the unreasonable delay or denial of payments of first-party benefits are set forth in the Act. It is also clear that it was the intention of both the courts and the legislature that punitive damages for failure to make payment of first-party benefits are not recoverable. Therefore, as stated above, the specific provisions of the No-Fault Act shall prevail over the general provisions of section 8371.

In further support of this position, the U.S. District Court for the Eastern District of Pennsylvania has recently held that section 8371 is inconsistent with the detailed procedures and remedies the legislature has mandated for claims by an insured in the Pennsylvania Motor Vehicle Financial Responsibility Law, which has replaced the repealed No-Fault Act. *Williams, supra,* 763 F. Supp. at 126. Using the same analysis as set forth above, the court in *Williams* found that section 8371 does not apply to claims by an insured under the MVFRL. *Id.,* 763 F. Supp. at 127. See also: *Baren v. Nationwide Insurance Co.,* Philadelphia County, No. 965, April Term, 1991; *Scott v. State Farm Insurance Co.,* Civil Action No. 91-4093, (E.D. Pa. 1991); *Carson v. ITT Hartford Insurance Group,* Civil Action No. 91-3113 (E.D. Pa. 1991); *Danton v. State Farm Mutual Auto. Insurance Co.,* Civil Action No. 91-0013 (E.D. Pa. 1991).

Therefore, plaintiff's claim in Count IV of her amended complaint was properly stricken.

## COUNT V

In Count V of her amended complaint the plaintiff seeks compensatory, consequential and punitive damages based on the Common Law Tort of Bad Faith. The plaintiff concedes and case law supports the conclusion that there is no *common law* action for bad faith against an insurer in Pennsylvania. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981). Therefore, Count V of plaintiff's amended complaint was properly stricken.

## COUNT VI

Count VI of plaintiff's amended complaint sets forth a cause of action for unfair and deceptive business practices allegedly prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 P.S. §201-1, et seq.

The plaintiff cites *Hardy v. Pennock Insurance Agency Inc.,* 365 Pa. Super. 206, 529 A.2d 471 (1987), and *Pekular v. Eich,* 355 Pa. Super. 276, 513 A.2d 427 (1986), as authority for her cause of action under the CPL, however, and *Hardy* and *Pekular* only stand for the proposition that common law actions for fraud and deceit are not barred by the Unfair Insurance Practices Act. In our court's order of April 27, 1992, we held that Count VI of plaintiff's amended complaint was stricken as the insured's exclusive remedy is the procedures set forth in the UIPA. See *Layton v. Liberty Mutual Fire Insurance Co.,* 577 F. Supp. 1 (E.D. Pa. 1983).

As the plaintiff has not set forth a claim for fraud or deceit but has alleged only an unreasonable denial of first-party benefits, *Hardy* and *Pekular, supra,* do not apply.

As said by the Superior Court in *Kramer v. State Farm Fire & Casualty Insurance Co.,* 412 Pa. Super. 227, 603 A.2d 192 (1992), "it is clear that while existing common law causes for fraud and deceit are permitted in addition to the statutory remedy of the Unfair Insurance Practices Act, no direct cause of action for 'bad faith' on the part of an insurer exists in Pennsylvania." For that reason, Count VI of plaintiff's amended complaint was properly stricken.

## COUNT VII

In Count VII of her amended complaint the plaintiff sets forth a claim for the intentional infliction of emotional distress. In *D'Ambrosio v. Pa. National Mutual Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981), as cited in this court's order of April 27, 1992, the Superior Court held that an insurer's refusal to pay an insured's claim for damages did not give rise to a cause of action against the insurer for intentional infliction of emotional distress.

Nonetheless, in order to impose liability for the intentional infliction of emotional distress, the conduct must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Restatement 2d, Torts, 46, comment d; *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273-73 (1979). In addition, the Supreme Court of Pennsylvania has held that in order to recover on a claim for the intentional infliction of emotional distress, the existence of the alleged emotional distress must be supported by competent medical evidence. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987).

It is for the court to determine initially whether the actions of a defendant can be regarded as so extreme and outrageous as to permit recovery. *Motheral v. Burkhart*, 400 Pa. Super. 408, 583 A.2d 1180 (1990); *Dawson v. Yayre Department Stores*, 346 Pa. Super. 357, 499 A.2d 648 (1985).

In the instant case, we find that there is nothing in the plaintiff's amended complaint that would allow reasonable persons to differ with respect to the issue of whether Prudential's conduct was sufficiently extreme and outrageous so as to result in liability. Additionally, there is no allegation that the alleged emotional distress is supported by competent medical evidence. *Kazatsky, supra.*

The plaintiff was involved in an automobile accident in 1983 and sustained serious injuries. Prudential initiated the payment of no-fault benefits in accordance with the plaintiff's policy for various medical expenses in addition to psychological, social and vocational rehabilitation expenses. In June of 1991, some eight years after the accident, Prudential made a determination to discontinue paying for certain services it believed no longer served any rehabilitative purpose. This determination was made subsequent to an examination of the plaintiff by Ki Ho Kim, M.D., of the Kim Institute for Rehabilitative Medicine. Prudential asserts that as a result of this examination, Dr. Kim concluded that physical therapy, speech therapy, computer therapy and equestrian therapy were neither reasonable nor necessary expenses as the plaintiff had reached her therapeutic plateau.

Although it still remains to be determined whether this decision was reasonable, it is clear that the conduct of Prudential does not rise to the level of outrageous behavior. Therefore, Count VII of plaintiff's amended complaint was properly stricken.