Darlene GAVAGHAN

v.

**REPLACEMENT RENT–A–CAR, INC. and Automate Auto Rental, Division of Agency Rent–A–Car.**

Civ. A. No. 92–3532.

United States District Court, E.D. Pennsylvania.

Dec. 3, 1992.

John R. Embick, Kittredge, Donley, Elson, Fullem and Embick, Philadelphia, PA, Margaret M. Zwisler, Dimitri J. Nionakis, Richard A. Ripley, Howrey & Simon, Washington, DC, and Iris S. Pincus, Segal, Wolf, Berk, Gaines & Liss, Philadelphia, PA, for plaintiffs.

Steven A. Asher, Scott A. Burr, Kohn, Savett, Klein & Graf, P.C.; Jeffrey B. McCarron; and James C. Haggerty, Swartz, Campbell & Detweller, Philadelphia, PA, for defendants.

## MEMORANDUM

BRODY, District Judge.

On September 29, 1989, plaintiff, Darlene Gavaghan ("Gavaghan"), rented an auto-mobile at the Philadelphia office of defendant, Automate Auto Rental, Division of Agency Rent–A–Car. Defendant Automate Auto Rental and defendant Replacement Rent–A–Car (hereinafter collectively referred to as "Automate") are related entities and are corporations organized and existing under the laws of the state of Ohio. At all times relevant to this lawsuit Automate was a self-insured car rental business.[1]

On the same day she rented the car, Gavaghan suffered serious injuries from an accident in the car. Gavaghan claims the accident occurred when an unidentified vehicle forced her car off the road causing her to sustain severe head, neck and back injuries.

After her accident, Gavaghan sought uninsured motorist benefits from Automate and from her own insurance company, Reliance Insurance Company ("Reliance"). She received $175,000 in uninsured motorist benefits from Reliance pursuant to her own policy. Automate denied Gavaghan's uninsured motorist claim and she filed this lawsuit in the Court of Common Pleas of Philadelphia County seeking contractual and extra-contractual damages.

Gavaghan's complaint alleges three counts against Automate. Count I states that Automate breached the policy of insurance it issued to Gavaghan when it refused to pay her uninsured motorist claim. Count II states that Automate's conduct constituted unfair or deceptive practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 Pa.Stat.Ann. section 201 *et seq.* (1976) and/or the Unfair Insurance Practices Act ("UIPA"), 40 Pa.Stat.Ann. section 1171.1 *et seq.* (1974) and/or the Unfair Claims Settlement Practices regulations, 31 Pa.Code section 146 *et seq.* (1978).[2] Count III states that Automate acted in bad faith

---

1. The Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat.Ann. Section 1701 *et seq.* (1984), defines self insured as "[a]n entity providing benefits and qualified in the manner set forth in section 1787 (relating to self insurance)." 75 Pa.Cons.Stat.Ann. Section 1702 (1984).

2. Plaintiff, in her response to defendants' Motion to Dismiss and on the record at the November 17, 1992 hearing on this motion, withdrew Count II of her complaint.

and asserts a claim for damages pursuant to 42 Pa.Cons.Stat. Section 8371 (1990).

Automate removed Gavaghan's complaint to this court based upon diversity jurisdiction in accordance with 28 U.S.C. Section 1332. Automate then moved to dismiss Gavaghan's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In the motion, Automate maintains that: (1) according to section 1733 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("PMVFRL"), 75 Pa.Cons.Stat.Ann. Section 1701 *et seq.* (1984), plaintiff waived her claim for insurance benefits from Automate when she recovered from Reliance before recovering from Automate; (2) plaintiff may recover no more than the amount of uninsured motorist coverage provided by Automate at the time of the accident ($15,000); (3) no private cause of action exists for claims pursuant to the CPL and UIPA;[3] (4) 42 Pa.Cons.Stat.Ann. Section 8371 (1990) does not apply to self insureds; and that (5) 42 Pa.Cons.Stat.Ann. section 8371 (1990) may not be retroactively applied.

## DISCUSSION

■ When deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must accept as true all allegations in the complaint and construe them in a light most favorable to Gavaghan. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989); *Williams v. State Farm Mutual Automobile Insur. Co.*, 763 F.Supp. 121, 122 (E.D.Pa.1991). I may grant Automate's motion to dismiss only "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Williams*, 763 F.Supp. at 122.

### a. Applicability of 42 Pa.C.S. Section 8371

The central issue in this case is whether 42 Pa.C.S.A. Section 8371 ("section 8371") applies to Automate's denial of Gavaghan's claim for uninsured motorist coverage. More specifically, the issue is whether section 8371 applies to an action for uninsured motorist benefits brought pursuant to the PMVFRL, and if so, then whether Automate's self insured status affects section 8371's application to this case.

■ Section 8371 creates a private cause of action for bad faith conduct by an insurer against an insured. *Thomson v. Prudential Property and Casualty Ins. Co.*, 1992 WL 210088, 1992 LEXIS 12627 (E.D.Pa.1992). Enacted on July 1, 1990, section 8371 states as follows:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer."

Defendants' motion to dismiss states that section 8371 does not apply to this case for two reasons: (1) section 8371 does not apply to self insureds; and (2) section 8371 may not be applied retroactively. For the reasons that follow, I hold that section 8371 applies to this action for uninsured motorist coverage brought pursuant to the PMVFRL and to Automate as a self insured. I also hold that section 8371's application to this case is not retroactive because Automate's alleged bad-faith conduct occurred after the statute's enactment date.

### 1) *Retroactive Application of Section 8371*

■ Application of section 8371 to defendants' conduct occurring after July 1, 1990 is appropriate and not retroactive. Automate first rejected Gavaghan's claim for uninsured motorist benefits on December

3. See note 2.

7, 1990.[4] Automate's memorandum of law attached to its motion to dismiss maintains that Section 8371 can not be applied to insurance contracts entered into before July 1, 1990. The Third Circuit, however, held this week that "[s]ection 8371 may be applied to any insurance contract regardless of date." *Colantuno v. Aetna Insur. Co.*, 980 F.2d 908, 911 (3d Cir.1992).

In *Colantuno*, Aetna refused to pay a judgment obtained by plaintiff after her car accident with an uninsured motorist. Plaintiff filed suit against Aetna and included a section 8371 bad faith claim. Aetna filed a motion to dismiss plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6). Aetna based its motion to dismiss on the argument that its insurance policy with plaintiff for $70,000 of uninsured motorist coverage predated the effective date of section 8371. The insurance policy at issue was in effect from January 12, 1984 to July 12, 1984. The Third Circuit reversed the district court's dismissal of plaintiff's complaint and held that the operative date for determining section 8371's applicability is the date when the alleged bad faith conduct occurred and not when the parties entered into the insurance contract.

Because Automate's denial of Gavaghan's request for uninsured motorist benefits occurred after the July 1, 1990 enactment date of section 8371, the application of section 8371 to this case is not retroactive.

### 2) *Application of Section 8371 to PMVFRL Actions*

The second issue I must consider has two dimensions: whether section 8371 applies to actions for uninsured motorist benefits brought pursuant to the PMVFRL and, if so, then whether it applies to defendants as self insureds. As outlined below, I hold that section 8371 applies to actions for uninsured motorist benefits brought under the PMVFRL and specifically to defendants as self insureds.

Three recent decisions issued by this court state that in some instances section 8371 may be an applicable remedy for an insured bringing claims pursuant to the PMVFRL. In *Williams v. State Farm Mutual Automobile Ins. Co.*, 763 F.Supp. 121 (E.D.Pa.1991), the court considered whether section 8371 applied to plaintiff's claim against her insurance company for bad faith failure to pay medical expenses pursuant to the PMVFRL. The court ultimately held that section 8371 did not apply for two reasons. First, because the alleged bad faith conduct occurred prior to July 1, 1990 and, second, because section 8371 conflicts with the remedies already set forth in the PMVFRL, particularly those in section 1797 as amended.[5] *Id.* at 126–27. *Williams* specifically precludes an insured from bringing a section 8371 bad faith claim against her insurance company for denial of medical expenses (first party benefits) in violation of the PMVFRL. However, it does not suggest that a section 8371 claim could never be brought in a case involving the PMVFRL if benefits, other than first party benefits, are at issue.

The decision of *Carson v. ITT Hartford Ins. Group*, 1991 WL 147469 (E.D.Pa.1991), took the court a step beyond *Williams* and refined its holding. In *Carson*, the plaintiff sued her insurance company when it denied her claim for first party benefits.[6] The court remanded the lawsuit to the Court of Common Pleas because it found that even if plaintiff had a valid section

---

**4.** At the November 17, 1992 hearing on this motion, the parties stipulated that counsel for plaintiff could amend the complaint to include the date of defendants' denial of Gavaghan's claim for uninsured motorist benefits as the date the alleged bad faith conduct occurred.

**5.** At the same time the legislature enacted section 8371, it enacted and amended several other statutes including the PMVFRL. The entire piece of legislation, known as Act 6, in part created section 8371, codified a procedure for the review and payment of an insured's claims

(section 1797), and expanded the remedies available to both medical care providers and insureds. (Section 1797(b) even allows for treble damages if a court finds an insurer's conduct was wanton when it denied a claim for medical expenses.)

**6.** Under the First Party Benefits section of the PMVFRL, an insurer must provide a medical benefit of $5,000 and a policy which meets the minimum requirements of financial responsibility. Uninsured motorist coverage is not included as a first party benefit.

8371 claim, she still would not meet the jurisdictional amount requirement of diversity jurisdiction. *Id.* at 4. In reaching this conclusion, the court agreed with the *Williams* decision that sections 1797 and 1798 of the PMVFRL state the exclusive remedies an insured is entitled to for claims for first-party benefits under the PMVFRL. In dicta, however, the court in *Carson* specifically stated that its decision did not say "that an insured covered by the MVFRL could never have a claim for punitive damages under s 8371." *Id.* at 3. Thus, the court in *Carson* left open the issue of section 8371's applicability to claims for benefits other than first party benefits brought pursuant to the PMVFRL.

Finally, in the decision of *Thomson v. Prudential Property and Casualty Ins. Co.*, 1992 WL 210088, 1992 LEXIS 12627 (E.D.Pa.1992), the court, on a motion *in limine*, determined whether the plaintiff could present evidence of the defendant's section 8371 bad faith to a jury. *Thomson* involved an auto accident and defendant's failure to acknowledge plaintiff's insurance claims in a timely fashion. The court held that the jury could hear evidence of defendant's bad faith conduct occurring after July 1, 1990. Although not directly stating so, by allowing the jury to hear and decide a section 8371 bad faith claim, this decision suggests that in some instances section 8371 applies to automobile insurance disputes.

These three cases, taken together, establish that section 8371 could apply to claims brought pursuant to the PMVFRL so long as the claims do not involve first party benefits. In the present case, the issue concerns the bad faith denial of uninsured motorist benefits. Uninsured motorist benefits are not first party benefits. Also, the reasons articulated in *Carson* and *Williams* for disallowing a section 8371 claim in the first party benefits context are

absent where uninsured motorist benefits are concerned. There is no elaborate and exclusive remedy set forth in the PMVFRL when an insurer refuses to pay uninsured motorist benefits. Therefore, there is no conflict between the uninsured motorist section of the PMVFRL and section 8371 like there is between section 1797 of the PMVFRL and section 8371 when first party benefits are at issue. Accordingly, I find that section 8371 applies in this action for uninsured motorist benefits brought pursuant to the PMVFRL.

### 3) *Application of Section 8371 to Self Insureds*

Section 8371 applies to this case because it is an action for the bad faith denial of uninsured motorist benefits. Automate, however, suggests that its self insured status precludes Gavaghan's section 8371 claim. In particular, Automate maintains that plaintiff's section 8371 claim must be dismissed because on its face the statute applies only where an insurance policy is at issue. Automate asserts that no insurance policy is at issue because it is self insured, therefore, section 8371 does not and can not apply.

Although the Pennsylvania Supreme Court has yet to address this precise issue, other related decisions direct me to treat self insureds just as I would those who choose to meet the financial responsibility requirements by purchasing an insurance policy.[7] This is especially the case when injured parties stand to suffer because a self insured is involved. An analysis of the PMVFRL and recent Pennsylvania decisions concerning self insureds indicates that Automate's self insured status does not exempt it from shouldering the same type of responsibilities owed by insurance companies to their insureds and thus does not prevent Gavaghan from bringing a section 8371 claim.

---

7. Because this is a diversity case, the federal court must apply the substantive law of the state where it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Here, I am asked to interpret Section 8371 and its application to this case, therefore, I must consider decisions rendered by the Pennsylvania courts and accept those rendered by the Pennsylvania Supreme Court as the ultimate authority. *Williams v. State Farm Mutual Automobile Ins. Co.*, 763 F.Supp. 121, 123 (E.D.Pa. 1991); *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 n. 3 (3d Cir.1985).

The PMVFRL requires vehicle owners to show their financial responsibility at the time they register their vehicles. Financial responsibility is "[t]he ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident...." 75 Pa.Cons.Stat.Ann. Section 1702. A vehicle owner may satisfy this financial responsibility requirement either by purchasing an insurance liability policy which meets the minimum mandatory limits or by registering with the Pennsylvania Department of Transportation as a self insured.[8] A self insurer certifies, on an annual basis, that it is financially able to meet the minimum requirements of financial responsibility as defined in the PMVFRL. While registering as a self insured enables a vehicle owner to eliminate the expense of insurance premiums it does not enable a vehicle owner to ignore the responsibility it owes to those injured by its vehicle. As discussed below, Pennsylvania courts refuse to distinguish between self insureds and those with a policy of insurance when to do so denies an injured party coverage simply because of a vehicle owner's choice to self insure.

In *Modesta v. Southeastern Pennsylvania Transportation Authority*, 503 Pa. 437, 469 A.2d 1019 (Pa.1983), the Pennsylvania Supreme Court held that SEPTA, as a self insurer under the No–Fault Act, must maintain uninsured motorist coverage. In *Modesta,* the plaintiff, an otherwise uninsured SEPTA passenger injured by an uninsured motorist, sought uninsured motorist benefits from SEPTA. SEPTA relied upon *Johnson v. Yellow Cab Co.,* 456 Pa. 256, 317 A.2d 245 (1974), a decision entered before automobile insurance was required, for its argument that plaintiff failed to state a cause of action because as a self insured it was not required to provide this type of coverage. The court disagreed, overruled *Yellow Cab* and stated that SEPTA, as a self insurer, is in the same position as a vehicle owner who purchased an insurance policy; under the Uninsured Motorist Act, 40 Pa.Stat.Ann. Section 2000, both had to maintain uninsured motorist coverage. The court also noted that "self-insurance is not a means by which self-insurers may avoid the claims of those individuals for whose protection the insurance laws have been enacted." 503 Pa. at 441–42, 469 A.2d at 1022. The court based its reasoning upon the rationale that the plaintiff should not be denied uninsured motorist coverage simply because she was injured while in a self insured vehicle. *Id.* at 443, 469 A.2d at 1023.

In *Brissett v. Southeastern Pennsylvania Transportation Authority*, 355 Pa.Super. 508, 513 A.2d 1037 (Pa.Super.1986), the Superior Court of Pennsylvania considered whether SEPTA, as a self insured, had to provide uninsured motorist coverage to an insured passenger when that passenger already had received loss benefits under another policy.[9] SEPTA argued that, as a self insurer, it had to provide uninsured motorist coverage only to its injured passengers who were uninsured. The court relied upon and expanded the *Modesta* decision when it held that "SEPTA is required to provide the equivalent of uninsured motorist coverage and, therefore, will be treated under the law as though it had in place a policy of insurance providing unin-

**8.** Section 1787 of the PMVFRL requires self insurers to provide benefits pursuant to, section 1711, to make payments that will adequately satisfy judgments as set forth in section 1774 and to provide uninsured motorist coverage at the limits prescribed in section 1774. Section 1774 states that judgments "shall be deemed satisfied ... (1) [w]hen $15,000 has been credited upon any judgment or judgments rendered in excess of that amount because of injury to one person as the result of any one accident." 75 Pa.Cons.Stat.Ann. Section 1774(a)(1). At no time may insurers offer uninsured/underinsured motorist coverage in amounts greater than the liability limits of the bodily injury liability provisions of the policy. 75 Pa.Cons. Stat.Ann. Section 1736.

**9.** Plaintiff was a SEPTA passenger who was injured in a SEPTA accident involving an unidentified driver. Plaintiff lived with her son who had an insurance policy with Allstate. Plaintiff received basic loss benefits from Allstate under the No–Fault Act and then filed suit against SEPTA to recover uninsured motorist benefits.

sured motorist coverage." *Id.*, 355 Pa.Super. at 513, 513 A.2d at 1040.

In the more recent decision of *Eads v. Port Authority of Allegheny County*, 8 Pa.D. & C. 4th 661 (1990) Judge R. Stanton Wettick, Jr., the esteemed common pleas jurist from Allegheny County, held that under the PMVFRL a self insured must provide underinsured motorist coverage. In *Eads*, the plaintiff suffered injuries while riding a bus operated by defendant, a self insured entity. The defendant argued that the PMVFRL did not require self insureds to provide underinsured motorist coverage. The court relied upon the *Modesta* decision for its holding that defendant had to provide underinsured motorist coverage and that for it to find otherwise would tie the benefits an injured party could receive to the method of insuring a vehicle chosen by its owner. *Id.* at 663.

The Pennsylvania Supreme Court stated in *Modesta* that the approval of self insurance status by the Department of Transportation operates in the same way as an insurance policy because it indicates that the automobile owner will comply with the insurance laws and that the owner has financial resources at least in the amount required by statute to cover judgments against itself. 503 Pa. at 445, 469 A.2d at 1024. The decisions of the Pennsylvania courts dictate that self insureds like Automate must assume the responsibilities assumed by other insurers. Thus, I find that section 8371 applies to defendants' conduct.

### b. Waiver of Uninsured Motorist Benefits

■ Automate's motion to dismiss also addresses whether Gavaghan waived her right to recover uninsured motorist benefits from it because she first recovered $175,000 in uninsured motorist benefits from Reliance, pursuant to her own insurance policy. Automate relies upon 75 Pa. Cons.Stat.Ann. Section 1733 for its assertion that Gavaghan's recovery from Reliance, the secondary or excess carrier prevents her from recovering from Automate, the primary source of uninsured motorist benefits. Section 1733 provides in part that when multiple policies apply, "... payment

shall be made in the following order of priority:

(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is insured...."

Section 1733 of the PMVFRL prioritizes the recovery of uninsured motorist benefits when multiple insurance policies apply to an insured event. However, it does not preclude an insured from seeking benefits from the primary source of recovery when the secondary source pays its benefits first. According to the Pennsylvania Superior Court's decision in *Wolgemuth v. Harleysville Mut. Insur. Co.*, 370 Pa.Super. 51, 535 A.2d 1145, 1151 (Pa.Super.1988), alloc. den. 520 Pa. 590, 551 A.2d 216 (1988), section 1733 governs priority of recovery but does not control a party's entitlement to recover. In light of this decision and the policy in this state for liberal construction of the PMVFRL,[10] I deny Automate's motion to dismiss Count I of Gavaghan's complaint.

### c. Limitation of Uninsured Motorist Benefits

Automate's motion to dismiss also asks me to limit Gavaghan's claim for uninsured motorist benefits to $15,000, the amount of uninsured motorist coverage provided by Automate as required by the PMVFRL.[11] I will not consider Automate's request to limit damages at this stage of the case, rather, I deny Automate's motion to dismiss without prejudice to Automate to raise and expand upon this issue of limiting Gavaghan's recovery of uninsured motorist coverage in accordance with Fed.R.Civ.P. 56.

---

10. See *Eads*, 8 Pa.D. & C. 4th at 665.

11. Pursuant to the PMVFRL, each automobile insurance policy issued in Pennsylvania must

include uninsured motorist coverage. *Wolgemuth*, 370 Pa.Super. at 55–56, 535 A.2d at 1147–48; 75 Pa.C.S.A. Section 1731.

**1084**

## CONCLUSION

In conclusion, I hold that: (1) section 8371 applies to defendants' conduct occurring after the statute's enactment date; (2) section 8371 applies to actions for uninsured motorist benefits brought under the PMVFRL and to defendants' conduct even though they are self insured; (3) Gavaghan did not waive her right to seek uninsured motorist benefits from defendants; and (4) Automate's request to limit Gavaghan's uninsured motorist benefits to $15,000 is denied without prejudice to Automate to raise this issue in accordance with Fed. R.Civ.P. 56.

## ORDER

AND NOW, this 3rd day of December, 1992, upon consideration of defendants' Replacement Rent–A–Car, Inc. and Automate Auto Rental, Division of Agency Rent–A–Car's, motion to dismiss pursuant to Fed. R.Civ.P. Rule 12(b)(6) and the supporting and opposing memoranda, it is ORDERED as follows:

1. Defendants' motion to dismiss count I of plaintiff's complaint is denied. Defendants' request to limit plaintiff's uninsured motorist benefits to $15,000 is denied without prejudice to defendants to raise this issue in accordance with Fed.R.Civ.P. 56.

2. Defendants' motion to dismiss count II of plaintiff's complaint is granted pursuant to plaintiff's withdrawal of count II and count II of plaintiff's complaint is hereby dismissed with prejudice.

3. Defendants' motion to dismiss count III of plaintiff's complaint is denied.